**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

VICTORIANO TAVAREZ, on behalf of himself
and all others similarly situated,

                    Plaintiff,

    -against-

MOO ORGANIC CHOCOLATES, LLC,

                  Defendant.

Case No.: 1:21-cv-9816 (VEC)

---

### DEFENDANT MOO ORGANIC CHOCOLATES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF RELEVANT FACTS ..................................................................................3

      A.      The Allegations in the FAC. ...............................................................................3

ARGUMENT .............................................................................................................................5

  I.      STANDARD ON MOTION TO DISMISS UNDER FED. R. CIV. P.
12(B)(6)..............................................................................................................5

  II.     THE ADA DOES NOT APPLY TO STAND ALONE WEBSITES .....................5

      A.      The Law in the Second Circuit ...........................................................................7

      B.      The Court Should Follow the Recent Decisions Which Correctly
Held that Title III of the ADA Does Not Apply to Stand-Alone
Websites. .............................................................................................................9

      C.      The Court Should Not Follow the Decisions That Erroneously
Applied Title III of the ADA to Websites. .................................................11

      D.      Other Circuit Courts of Appeal to Address the Issue ...............................15

      E.      Congress Has Suggested that Title III of the ADA Does Not Apply
to Websites................................................................................................17

  III.    PLAINTIFF'S NYCHRL CLAIM SHOULD BE DISMISSED ...........................18

CONCLUSION.........................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Blick Art Materials, LLC,*
  268 F. Supp. 3d 381 (E.D.N.Y. 2017) ..................................................................12, 13, 14

*Arculeo v. On-Site Sales & Mktg., LLC,*
  321 F. Supp. 2d 604 (S.D.N.Y. 2004), *aff'd on other grounds*, 425 F.3d 193
  (2d Cir. 2005) ......................................................................................................................14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..............................................................................................................5

*Bais Yaakov of Spring Valley v. Alloy, Inc.,*
  936 F. Supp. 2d 272 (S.D.N.Y. 2013) .................................................................................17

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ..............................................................................................................5

*Boy Scouts of America v. Dale,*
  530 U.S. 640, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000) ....................................................7

*Brooks v. Lola & Soto Bus. Grp., Inc.,*
  No. 2:21-cv-00158-TLN-DB, 2022 WL 616798 (E.D. Cal. Mar. 2, 2022) ..........................16

*Brooks v. See's Candies, Inc.,*
  No. 2:20-cv-01236-MCE-DB, 2021 WL 3602153 (E.D. Cal. Aug. 13, 2021) .....................16

*Camacho v. Emerson College,*
  No. 18 CIV. 10600 (ER), 2019 WL 5190694 (S.D.N.Y. Oct. 15, 2019) ...............................3

*Del-Orden v. Bonobos, Inc.,*
  No. 17 CIV. 2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) ...................3, 13, 14

*Diaz v. Kroger Co.,*
  No. 18 CIV. 7953 (KPF), 2019 WL 2357531 (S.D.N.Y. June 4, 2019) .................................3

*Dorsett v. Cnty. of Nassau,*
  No. 11-CV-5748 SJF GRB, 2013 WL 272796 (E.D.N.Y. Jan. 24, 2013), *aff'd*,
  732 F.3d 157 (2d Cir. 2013) ................................................................................................17

*Edwards v. Sequoia Fund, Inc.,*
  938 F.3d 8 (2d Cir. 2019) ......................................................................................................5

*Gil v. Winn-Dixie Stores, Inc.,*
  21 F.4th 775 (11th Cir. 2021) ..............................................................................................17

*Gil v. Winn-Dixie Stores, Inc.*,
    993 F.3d 1266 (11th Cir. 2021) ......................................................................................16, 17

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
    530 U.S. 1, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000) ................................................12

*Langer v. Carvana, LLC*,
    No. 21-00303, 2022 U.S. Dist. LEXIS 82668 (C.D. Cal. Apr. 28, 2022) ..............................15

*Langer v. Pep Boys Manny Moe & Jack of Cal.*,
    No. 20-CV-06015, 2021 WL 148237 (N.D. Cal. Jan. 15, 2021)............................................16

*Leonard F. v. Israel Disc. Bank of N.Y.*,
    199 F.3d 99 (2d Cir. 1999).................................................................................................8

*Lopez v. W. Elm, Inc.*,
    No. 19 CIV. 10079 (ER), 2020 WL 6546214 (S.D.N.Y. Nov. 6, 2020) ..............................18

*Markett v. Five Guys Enterprises LLC*,
    No. 17-CV-788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017)....................................11

*Martinez v. MyLife.com*,
    No. 21-cv-4779-BMC (E.D.N.Y. Nov. 1, 2021) ....................................................7, 10, 11, 12

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)................................................................................................5

*Mendez v. Apple Inc.*,
    No. 18 CIV. 7550 (LAP), 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019) ..............................18

*Nat'l Fed'n of the Blind v. Scribd Inc.*,
    97 F. Supp. 3d 565 (D. Vt. 2015)........................................................................................11

*Pallozzi v. Allstate Life Insurance Co.*,
    198 F.3d 28 (2d Cir. 1999)................................................................................... *passim*

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001)........................................................7

*Range v. 230 W. 41st St. LLC*,
    No. 17 CIV. 149 (LAP), 2020 WL 3034800 (S.D.N.Y. June 5, 2020) ..............................18

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312, 128 S. Ct. 999, 169 L. Ed. 2d 892 (2008)........................................................12

*Robles v. Domino's Pizza, LLC*,
    913 F.3d 898 (9th Cir.), *cert. denied*, 140 S. Ct. 122, 205 L. Ed. 2d 41 (2019)............3, 15, 16

*Suris v. Gannett Co.*,
  No. 20-CV-1793 (BMC), 2021 WL 2953218 (E.D.N.Y. July 14, 2021) .....................7, 10, 11

*Winegard v. Newsday LLC*,
  556 F. Supp. 3d 173 (E.D.N.Y. 2021) ............................................................. *passim*

**Statutes**

ADA .................................................................................................................13

ADA Title III ...............................................................................................13, 14, 18

American Disabilities Act, 42 U.S.C. § 12181, *et. seq.* ......................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ............................................................................................5

Fed. R. Civ. P. 12(b)(1) ........................................................................................1, 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 5

https://www.moochocolates.com/#showacsb ............................................................3

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ...................2

Online Accessibility Act, H.R. 1100, 117th CONGRESS, 1st Session (2021) )....................17, 18

MOO Organic Chocolates, LLC ("MOO Organic") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff Victoriano Tavarez's ("Plaintiff") First Amended Complaint, dated June 28, 2028 ("FAC"), pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This case presents the question of whether a website constitutes a "place of public accommodation" under Title III of the American Disabilities Act, 42 U.S.C. § 12181, *et. seq.* ("ADA"). For the reasons discussed below, the answer is no. Only physical places qualify as places of public accommodation, and alleged website barriers cannot form the basis of an ADA claim unless there is an integration between the website barrier and plaintiff's ability to access the goods and services of a physical place of public accommodation. Because, even after amending his Complaint, Plaintiff still does not (nor can he) allege that he was denied access to a physical place of public accommodation, or the goods and services of a physical place of public accommodation, the FAC must be dismissed with prejudice.

This lawsuit is one of hundreds of cases filed in this district utilizing largely form complaints with virtually identical allegations and theories alleging that the defendant business discriminates against blind and visually impaired consumers by maintaining an inaccessible website. The plaintiffs' lawyers who regularly file these "website accessibility cases" have hijacked statutes designed to legitimately preclude commercial discrimination against disabled consumers as a vehicle for corporate shakedowns. Plaintiff's counsel in this case has filed over 1500 (and counting) identical boilerplate complaints in the Southern District of New York over the past several years, approximately 112 of those on behalf of this particular Plaintiff. The majority of these cases settle early for cost-benefit reasons. Since the inception of the 2017 explosion of website accessibility cases, these settlements have cost businesses millions of dollars

1

in the aggregate.  Unfortunately, these forced settlements have been driven by a handful of district court cases erroneously assuming that Title III of the American Disabilities Act, 42 U.S.C. § 12181, *et. seq.* ("ADA") applies to stand-alone websites.  It does not.  As every circuit court of appeal to address the issue (and recently, several New York federal judges) have recognized—the plain language of the ADA limits the statute's application to *physical places* of public accommodation and, absent a connection to a physical location or the goods and services of a physical location, an alleged barrier on a website cannot implicate liability under Title III of the ADA.

MOO Organic sells hand crafted quality chocolates made from the best organic ingredients. The company's direct sales to consumers occur only through its website, https://www.moochocolates.com/ (the "Website"), since MOO Organic does not operate any physical stores.[1]  The brand is built upon a high standard of quality and consumer recognition which MOO Organic markets to and is derived from every single customer.  The notion that MOO Organic promotes a policy and practice of discriminating against blind customers by erecting barriers on its Website is absurd—indeed, offensive.  MOO Organic's business model and mission is to offer the highest quality chocolates to *all* of its customers, and no serial plaintiff's baseless claims can change that.

Plaintiff is a Bronx resident who identifies himself as a legally blind internet user who has been discriminated against by virtue of the Website, which Plaintiff alleges is a "place of public accommodation" that is inaccessible to Plaintiff and other visually-impaired persons in violation of Title III of the ADA and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.  ("NYCHRL").  Plaintiff alleges that MOO Organic, which operates the Website, failed to

---

[1] MOO Organic's products are otherwise sold only through third-party retailers.

2

design, construct, maintain, and operate the Website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. (FAC ¶ 1).

If forced to litigate this action, MOO Organic will prove at trial that it maintains an accessible website which is in compliance with the standards of the Web Content Accessibility Guidelines ("WCAG 2.1 Guidelines").[2]   The Complaint, however, must be dismissed for a fundamental threshold reason—<u>MOO Organic is not a "public accommodation" that is covered by the ADA</u>.  Indeed, the language and history of the ADA make clear that Congress did not intend for the ADA to apply to stand-alone websites like the Website at issue here.

Finally, because Plaintiff's ADA claim fails, and is the sole claim through which this Court has original jurisdiction, Plaintiff's New York City law claim should also be dismissed.

<u>STATEMENT OF RELEVANT FACTS</u>

**A.  The Allegations in the Complaint.**

Plaintiff alleges he is a legally blind person who cannot use a computer without the assistance of screen-reading software. (FAC ¶ 1).  Plaintiff references "several screen-reading software programs" that are available to blind users, including NonVisual Desktop Access,

---

[2] The World Wide Web Consortium ("W3C") is a private organization that develops website standards. W3C's Web Accessibility Initiative publishes Web Content Accessibility Guidelines ("WCAG"), which are "private industry standards for website accessibility developed by technology and accessibility experts." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 902 n. 1 (9th Cir.), *cert. denied*, 140 S. Ct. 122, 205 L. Ed. 2d 41 (2019); *see also* Web Accessibility Initiative, Web Content Accessibility Guidelines (WCAG) Overview, https://www.w3.org/WAI/standards-guidelines/wcag (last visited March 12, 2021). Though WCAG are "private, unenforceable guidelines," *Robles*, 913 F.3d at 907, they "have been widely adopted, including by federal agencies, which conform their public-facing electronic content to" WCAG standards. *Id*. at 902 n. 1. WCAG 2.1 is the most recent version of the guidelines.  MOO Organic's Website is serviced by accessiBe, an artificial intelligence (AI)-powered accessibility compliance solution that ensures the Website provides a digital experience that adheres as strictly as possible to the WCAG 2.1 guidelines. MOO Organic publishes an accessibility policy on the Website, which signals compliance with WCAG 2.1, conveys MOO Organic's commitment to maintaining the Website in an accessible form, and provides contact information that Plaintiff could have used to report any accessibility-related problems.  *See* https://www.moochocolates.com/#showacsb.   The Court may review the Website itself. *See Camacho v. Emerson College*, No. 18 CIV. 10600 (ER), 2019 WL 5190694, at *4 (S.D.N.Y. Oct. 15, 2019); *Diaz v. Kroger Co.*, No. 18 CIV. 7953 (KPF), 2019 WL 2357531, at *7 n.10 (S.D.N.Y. June 4, 2019); *Del-Orden v. Bonobos, Inc.*, No. 17 CIV. 2744 (PAE), 2017 WL 6547902, at *3 n.4 (S.D.N.Y. Dec. 20, 2017).

otherwise known as "NVDA", and Plaintiff alleges that he was using NVDA when he purportedly accessed the Website. (*Id*. ¶¶ 16, 22). Plaintiff alleges that version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"), published by the international website standards organization, the World Wide Web Consortium (W3C), are the "well-established guidelines for making websites accessible to blind and visually-impaired people." (FAC ¶ 19). Plaintiff does not allege that the WCAG 2.1 guidelines have the force of law, or that there exists any authority obligating MOO Organic to meet the WCAG 2.1 guidelines. (*See* FAC, generally).

Critically, Plaintiff does not allege (nor can he) that MOO Organic operates any consumer-facing physical locations. In fact, Plaintiff admits that "[MOO Organic] is an *online retail company* that owns and operates a website offering products that [it] delivers to New York and across the country," and that "[MOO Organic] offers its website so that, inter alia, the general public can *transact business on it*." (FAC ¶ 20) (emphasis added). Plaintiff alleges that MOO Organic has a "policy and practice to deny Plaintiff [] access to its website, and to specifically deny the goods and services offered to the general public" (*Id*. ¶ 21). Plaintiff claims he visited the Website on some unspecified dates before June 2021. (FAC ¶ 22). He claims that during those purported visits, he was denied the full enjoyment of the facilities, goods and services offered on the Website because of "multiple access barriers" on the Website." (*Id*.).

Plaintiff seeks, among other things, statutory money damages, actual damages and punitive damages, including pre-judgment and post-judgment interest, and a preliminary and permanent injunction requiring MOO Organic to take all the steps necessary to make the Website into full compliance with the requirements set forth in the ADA and NYCHRL. (FAC at p. 14 "Prayer for Relief").

**ARGUMENT**

**I.      STANDARD ON MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)**

To survive a Fed. R. Civ. P. 12(b)(6) dismissal motion, a complaint must include sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On the factual sufficiency prong, the pleading standard of Fed. R. Civ. P. 8(a)(2) demands more than an unadorned, 'the-defendant-unlawfully-harmed-me' accusation. *Iqbal*, 556 U.S. at 677-79. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of 'further factual enhancement." *Id*.  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court is not required to credit conclusory allegations or legal conclusions couched as factual allegations. *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).

**II.     THE ADA DOES NOT APPLY TO STAND ALONE WEBSITES**

Congress passed the ADA in 1990 and amended it in 2008. Title III of the ADA provides in relevant part that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations *of any place of public accommodation* by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C.A. § 12182(a) (West) (emphasis added).  In the 12 subparagraphs in Section 12181(7), Congress provided a list of categories of places that qualify as "places of public accommodations."

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce--

5

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

6

*Id*. at § 12181(7).  Every accommodation listed therein is <u>a physical location</u>. *Id*.   The list does

not include websites or any other forms of non-*places* (*i.e.*, catalogs, vending machines, televised

home shopping, etc.).  *Id*.

The United States Supreme Court has never reached the question of whether a website

constitutes a "place of public accommodation" under Title III of the ADA.  However, in *Boy Scouts*

*of America v. Dale*, 530 U.S. 640, 120 S.  Ct. 2446, 147 L. Ed. 2d 554 (2000), in construing New

Jersey's  public  accommodations  law—which  contains  the  same  exact  phrase  ("place  of  public

accommodation")  as  Title  III  of  the  ADA—the  court  construed  the  word  "place"  in  the  phrase

place of public accommodation to necessarily invoke a "physical location." *Id*. at 658 (Reversing

New Jersey Supreme Court's application of its public accommodations law to a private, not-for-

profit organization: "In this case, the New Jersey Supreme Court went a step further and applied

its public accommodations law to a private entity without even attempting to tie the term "place"

to a physical location.); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 662, 121 S. Ct. 1879,

1882, 149 L. Ed. 2d 904 (2001) ("The events occur on 'golf course[s],' *a type of place* specifically

identified as a public accommodation.") (emphasis added).

### A.  The Law in the Second Circuit

Like the Supreme Court, the Second Circuit has never resolved the question of whether a

website constitutes a "place of public accommodation," and the issue remains open. *Martinez v.*

*MyLife.com*, No. 21-cv-4779-BMC (E.D.N.Y. Nov. 1, 2021); *Winegard v. Newsday LLC*, 556 F.

Supp. 3d 173, 174 (E.D.N.Y. 2021); *Suris v. Gannett Co.*, No. 20-CV-1793 (BMC), 2021 WL

2953218, at *1 (E.D.N.Y. July 14, 2021).

In *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), in what is probably

the most-relevant Second Circuit case on the issue presented here, the Second Circuit analyzed

whether Title III of the ADA was limited to physical places, or whether the statue could apply to an insurance company's refusal to sell a life insurance policy to a client because of the client's mental disability. *Id.* at 30.  In finding that the policy that the plaintiffs were being denied was a good and service of a place of a public accommodation, the Court in *Palozzi* first had to find that the text of the statute specified an "insurance office" as a "public accommodation." *Id.* at 31 ("We start with the fact that Title III specifies an 'insurance office' as a 'public accommodation.'"). Only upon satisfying the public accommodation test did the court reach the issue of whether the insurance policies *issued by the physical insurance office* were goods and services of that place of public accommodation.  *Id.*  The court held that the policies were covered by Title III because "[t]he most conspicuous 'goods' and 'services' provided by an 'insurance office' are insurance policies."  *Id.*  Importantly, the court looked no further than the statutory text in reaching this conclusion.  *Id.* at 31 ("We believe the text of the statute confirms Plaintiffs' position, making it unnecessary for us to examine their back-up arguments based on legislative history and administrative interpretation.").

*Pallozzi* does not support the proposition that *websites themselves* are places of public accommodation.  If anything, *Pallozzi* makes clear that satisfying the physical place test is a condition precedent to the application of Title III of the ADA to a website, on the premise that the website is a "good[], service[], facility[y], privilege[], advantage[], or accommodation[] of [a] place of public accommodation."  42 U.S.C.A. § 12182(a) (West).[3]  There have been no subsequent Second Circuit decisions that have ever relaxed this requirement, and there exists no binding authority supporting the application of Title III of the ADA to websites of businesses that

---

[3] The Second Circuit subsequently characterized its holding in *Pallozzi* as being "that an insurance *office* in its dealings with the public is a 'place of public accommodation' and is regulated by Title III." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 n. 8 (2d Cir. 1999) emphasis added).

do not operate any places of public accommodation as that term is defined in 42 U.S.C.A. § 12181(7).

**B. The Court Should Follow the Recent Decisions Which Correctly Held that Title III of the ADA Does Not Apply to Stand-Alone Websites.**

Several recent decisions within this circuit have bolstered the principle that Title III of the ADA does not apply to entities having no public-facing physical operations.

In *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021), the Honorable Eric R. Komitee carefully analyzed the ADA's text and context as well as the history of the term "place of public accommodation," and held that the ADA excludes websites of businesses with no public-facing, physical retail operations from the definition of public accommodations. *Id*. at 180.

In *Winegard*, a deaf plaintiff alleged that Newsday's failure to provide closed captions on its website videos violated Title III of the ADA. *Id* at 174. In assessing whether the ADA applied to websites, Judge Komitee noted that Congress's express limitation of the enumerated categories to physical places "was obviously deliberate." *Id*. at 177. Congress could easily have said the ADA applies to "all businesses operating in interstate commerce," or all "retail" or "service" operations, but it chose not to. *Id*. The plain language used by Congress thus demonstrated its decision to apply the ADA's anti-discrimination provision to physical places rather than business operations generally. *Id*. The court also noted that, even accepting the premise that Congress could not have anticipated the Internet when the ADA was passed (a dubious suggestion since the Internet was already well in development), there were many other types of businesses operating outside of brick-and-mortar premises in 1990 (e.g., catalogs, mail-order, etc.). *Id*. at 178. Yet Congress still chose to list only physical places. *Id*. Moreover, the ADA was amended in 2008. If websites had indeed been overlooked in the 1990 bill simply because the Internet was in its infancy, Congress could have amended the definition to clarify their inclusion in 2008, by which point the Internet

had become ubiquitous. *Id*. at 178 n.11.  The fact that it did not demonstrates Congress's intent for the ADA not to apply to websites.  *Id*.

In particular, Judge Komitee dismantled the premise that *Pallozzi* compelled extending the reach of Title III of ADA to apply to stand-alone websites, noting that, in *Pallozzi*, there was no dispute that a physical "insurance office" qualified as a public accommodation and the sole issue was whether an insurance policy was *a "good" or "service" of an insurance office* so as to preclude an insurance office from denying that service to a customer because of his disability. *Id*. at 181.  Judge Komitee correctly recognized that *Pallozzi* did not support applying the ADA to stand alone websites because, unlike *Pallozzi*, Winegard never alleged that Newsday operated a "public-facing, physical place in which newspapers or any other goods or services are sold." *Id*.

In *Suris v. Gannett Co.*, the Honorable Brian Cogan similarly concluded that defendant's website was not a place of public accommodation under Title III of the ADA.  *Suris*, 2021 WL 2953218, at *2 ("Even construing the list of categories liberally, plaintiff has not sufficiently alleged that defendants' goods and services fall within one of the enumerated categories. Because I conclude that defendants' website is not a good or service of a place of public accommodation, the motion to dismiss is granted") 2021 WL 2953218, at *2.  Acknowledging that "the Second Circuit has not yet decided the issue, nor offered guidance on whether a website can be a 'public accommodation' if a defendant operated no physical space open to the public but nevertheless provided goods or services to the public," the court dismissed plaintiff's complaint because the website was not itself a place of public accommodation, and plaintiff could point to no facility that satisfied one of the twelve categories of places listed in 42 U.S.C. § 12181(7).  *Id*. at *2.

In *Martinez v. MyLife.com, Inc*, Judge Cogan again dismissed a complaint alleging that a website was a place of public accommodation.  2021 WL 5052745, at *3.  The court held that,

even construing the twelve categories of public accommodations in 42 U.S.C. § 12181(7) liberally, the statute's drafters' focus on tangible, physical places, "demonstrate[s] Congress's decision to apply the ADA's anti-discrimination provision to physical places rather than business operations generally." 2021 WL 5052745, at *2. Importantly, the court acknowledged (as did Judge Komitee in *Winegard*) that the cases (discussed in Sub-Section C below) holding that stand-alone websites qualified as public accommodations within the meaning of the ADA relied on *Pallozzi*. *Id.* Like Judge Komitee, Judge Cogan similarly found that these courts' reliance on *Pallozzi* for that proposition was misplaced because, in *Pallozzi*, the Second Circuit accepted as true that the physical insurance office in question was a "place of public accommodation," so as to satisfy the public accommodation test. *Id*.

MOO Organic respectfully submits that *Winegard v. Newsday*, *Suris v. Gannett*, and *Martinez v. MyLife.com* correctly interpret Title of III of the ADA the way Congress intended, and in the only way that comports with binding precedent. Accordingly, the Complaint must be dismissed because MOO Organic does not "own[], lease[] (or lease[] to), or operate[] a place of public accommodation for purposes of Title III of the ADA. 42 U.S.C.A. § 12182(a) (West).[4]

### C. The Court Should Not Follow the Decisions That Erroneously Applied Title III of the ADA to Websites.

To be sure, several district court judges within this circuit have opined that websites themselves are places of public accommodation. *See*, *e.g.*, *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, (D. Vt. 2015) (Title III of the ADA covers the website of a company without any physical locations); *Markett v. Five Guys Enterprises LLC*, No. 17-CV-788 (KBF), 2017 WL 5054568, at *2 (S.D.N.Y. July 21, 2017) ("[T]he text and purposes of the ADA, as well as the

---

[4] MOO Organic does not own, lease, lease to, or operate the third-party retailers where its products are sold, and Plaintiff does not allege as much.

breadth of federal appellate decisions, suggest that defendant's website is covered under the ADA, either as its own place of public accommodation or as a result of its close relationship as a service of defendant's restaurants, which indisputably are public accommodation under the statute."); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381 (E.D.N.Y. 2017) ("It is unambiguous that under Title III of the ADA, dickblick.com is a place of public accommodation.").

The holdings in these cases find no basis in the language of the statute, which makes clear that it applies to physical *places* and/or the goods or services *of those physical places*.   Indeed, Congress demonstrated its decision to apply the ADA's anti-discrimination provision to physical places rather than any general business operations by enumerating physical places only.  *See MyLife.com*, 2021 WL 5052745, at *2 ("Of the fifty specific examples of businesses contained within the ADA's definition of 'public accommodation', at least forty-nine indisputably relate to physical places.").[5]  "Congress "says in a statute what it means and means in a statute what it says there." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947, 147 L. Ed. 2d 1 (2000).  When a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id*. (internal quotations omitted).  The language of the statute is the best (indeed, only) indication of what Congress intended.  *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 326, 128 S. Ct. 999, 1009, 169 L. Ed. 2d 892 (2008) ("*It is not our job to speculate upon congressional motives.   If we were to do so, however, the only indication available—the text of the statute—*

---

[5] As was recognized in *Winegard*, while some courts have noted that "travel service" does not invariably refer to a physical space, there is no suggestion in the statute (or logically) that a travel service must be a virtual operation. *Winegard*, 556 F. Supp. 3d at 177. Moreover, read in context, "travel service" appears to refer to travel agencies and facilities like American Express counters (offering traveler's cheques, currency-exchange services, etc.), which commonly operated out of physical facilities when the ADA was adopted, and still do (albeit in lesser numbers). *Id.*

suggests that the solicitude for those injured by FDA-approved devices . . . was overcome in Congress's estimation by solicitude for those who would suffer without new medical devices") (emphasis added).

Moreover, the above-referenced cases based their holdings on the Second Circuit's *Pallozzi* decision, all reasoning that *Pallozzi* compels the conclusion that Title III of the ADA must be read broadly enough so as to cover websites themselves. For example, in concluding that a website was itself a place of public accommodation, the Honorable Jack Weinstein posited that the issue of "the importance of a link between a 'place' and the goods and services being offered by the company—was given virtually no import by the [*Pallozzi*] court." *Blick Art Materials, LLC*, 268 F. Supp. at 393. However, as discussed above, Judge Weinstein's finding was demonstrably incorrect. Satisfying the "place of public accommodation" test was actually critical to the *Pallozzi* court's decision.

In fact, some of the cases which applied *Pallozzi* in finding that websites qualified as public accommodations firmly support MOO Organic's position that stand-alone websites do not fall under Title III of the ADA. In *Del-Orden v. Bonobos, Inc.*, the Honorable Paul A. Engelmayer reasoned that *Pallozzi* supported the holding that that commercial websites qualified as "public accommodations" within the meaning of the ADA. *See* No. 17 CIV. 2744 (PAE), 2017 WL 6547902, at *1, 5 (S.D.N.Y. Dec. 20, 2017). However, the court's analysis betrays the fact that the language of the statute (and *Pallozzi*) requires that the place of public accommodation test must first be satisfied. The *Bonobos* court focused on Congress's use of the phrase "*of* any place of public accommodation," instead of "*in* any place of public accommodation." *Del-Orden*, 2017 WL 6547902, at *5. The court focused on this language to make the point that Title III was not limited to a plaintiff's inability to consume a good or service *(literally) inside a physical place of*

*accommodation*, but the statute could apply to a public accommodation's website—as a good and service of that place of public accommodation.

> The Circuit also drew significance from that statutory text, noting that Congress had chosen to guarantee access to goods and services 'of any place of public accommodation,' rather than 'in' such a place. It explained: "The term 'of' generally does not mean 'in,' and there is no indication that Congress intended to employ the term in such an unorthodox manner in Section 302(a) of Title III." [*citing Pallozzi*, 198 F.3d at 33]. The Circuit also noted that "many of the private entities that Title III defines as 'public accommodations'— such as a 'bakery, grocery store, clothing store, hardware store, [or] shopping center,' as well as a 'travel service, ... gas station, office of an accountant or lawyer, [or] pharmacy,' sell goods and services that are ordinarily used outside the premises." . . . It would make little sense, the Circuit reasoned, to limit Title III's scope to discrimination in the provision of goods or services *literally consumed in a place of public accommodation*

*Id.* at *5 (emphasis added).   Nowhere does *Bonobos* say that *Pallozzi* (or any other binding authority) supports the proposition that a website having no connection to a place of public accommodation (like MOO Organic's website at issue here) could itself be a place of public accommodation.   No such authority exists.

Put simply, there is no basis for the *Blick Art* court's, or any of the above-referenced district courts', erroneous conclusions that the Second Circuit precedent in *Pallozzi* supports, much less compels, extending title III of the ADA to stand-alone websites.   The Court need not (and should not) follow the district court decisions holding that a website itself is a place of public accommodation.[6]   A proper interpretation of Title III of the ADA can only lead to one conclusion—a denial of equal access to a website can support an ADA claim only if the denial has prevented or impeded a disabled plaintiff from equal access to, or enjoyment of, the goods and

---

[6] It is an elementary "maxim that the decisions of district courts, even those located within the same district, are not binding on other district courts." *Arculeo v. On-Site Sales & Mktg., LLC*, 321 F. Supp. 2d 604, 609 (S.D.N.Y. 2004), *aff'd on other grounds*, 425 F.3d 193 (2d Cir. 2005).

services of the defendant's physical customer-facing facilities.   MOO Organic, sells directly to the public only as an e-commerce retailer which does not own or operate any customer-facing physical locations.  MOO Organic is therefore not a "public accommodation" as that term is defined by Title III of the ADA.  If MOO Organic is not a public accommodation, its Website cannot be subject to the ADA because it neither, *per se*, a "place of public accommodation," nor a "good and service of" a place of public accommodation.

### D.  Other Circuit Courts of Appeal to Address the Issue

Only two circuit courts of appeal were presented with the issue of whether a website is a place of public accommodation under Title III of the ADA.  Both courts refused to hold that websites, in and of themselves, were public accommodations.  In *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir.), cert. denied, —— U.S. ——, 140 S. Ct. 122, 205 L.Ed.2d 41 (2019), the Ninth Circuit expressly avoided resolving the issue of whether a website was itself a public accommodation (*id*. at 905 n.6).   However, the court instead embraced a so-called "nexus" standard; holding that the ADA applied to Domino's website and app because they "connected customers to the goods and services of" Domino's physical restaurants. *Id*. at 905.  The court found critical the fact that "[c]ustomers use the website and app to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-store pickup." *Id*.  The court made clear that the nexus requirement was satisfied only because the website and app "facilitate[d] access to the goods and services of a place of public accommodation—Domino's physical restaurants." *Id*.

District courts in the Ninth Circuit applying the holding in *Robles* have further clarified that simply pleading that defendant operated *both*, a website and a physical location, is not enough to implicate Title III of the ADA.  The plaintiff must identify a connection between *the purported website barrier* and plaintiff's ability to access defendant's physical location.  *Langer v. Carvana,*

*LLC*, No. 21-00303, 2022 U.S. Dist. LEXIS 82668 (C.D. Cal. Apr. 28, 2022) (dismissing complaint with prejudice even though plaintiff alleged both, that Carvana's website had barriers to access, and that Carvana operated a physical location, because plaintiff failed to allege that the website barriers impeded plaintiff's access to the physical location); *Brooks v. Lola & Soto Bus. Grp., Inc.*, No. 2:21-cv-00158-TLN-DB, 2022 WL 616798 (E.D. Cal. Mar. 2, 2022) (plaintiff failed to identify a connection between a website barrier and plaintiff's ability to access the physical location because "[p]laintiff [did] not allege she tried to order clothes from the Website for pickup at [d]efendant's shop but was unable to do so … [n]or does she identify any integration or interconnectedness between the Website and [d]efendant's physical store comparable to that encountered in *Robles* … [i]nstead, Plaintiff identifies only a store locator … that, by all indications, would have no functional difference from the results obtained by a simple Google search for [Defendant's shop] on any internet browser"); *Brooks v. See's Candies, Inc.*, No. 2:20-cv-01236-MCE-DB, 2021 WL 3602153, at *3 (E.D. Cal. Aug. 13, 2021) (dismissing complaint because, even though plaintiff alleged website barriers that prevented her from learning about the business (including its hours of operation), the plaintiff failed to identify a nexus between a website barrier and plaintiff's ability to access defendant's physical candy store); *Langer v. Pep Boys Manny Moe & Jack of Cal.*, No. 20-CV-06015, 2021 WL 148237, at *5 (N.D. Cal. Jan. 15, 2021) ("a plaintiff who fails to allege any connection between the Website barriers and a physical location does not have an ADA claim.").

The only other Circuit Court to directly address the issue of whether *a website itself* was a place of public accommodation under Title III of the ADA was the Eleventh, which, unlike the Ninth Circuit in *Robles*, directly analyzed and resolved the precise issue.  In *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir. 2021), the Eleventh Circuit held that the statutory language

defining "public accommodations" was unambiguous and clear—it describes 12 types of locations, all of which were tangible, physical places, and no intangible places or spaces, such as websites, are listed. The court thus concluded that "pursuant to the plain language of Title III of the ADA, public accommodations are limited to actual, physical places," and websites do not qualify. *Id*. at 1277. The court's decision was subsequently vacated as moot by an *en banc* panel "[d]ue to the expiration of the injunction while the appeal was pending and the absence of any formal award of declaratory relief . . ." *Gil v. Winn-Dixie Stores, Inc.*, 21 F.4th 775, 776 (11th Cir. 2021).

### E.  Congress Has Suggested that Title III of the ADA Does Not Apply to Websites

On February 18, 2021, Reps. Ted Budd (R-NC), Richard Hudson (R-NC), and Lou Correa (D-CA) introduced a bill in the House of Representatives that would formally extend the ADA to apply to websites. *See* Online Accessibility Act, H.R. 1100, 117th CONGRESS, 1st Session (2021) ) (the "Proposed Act") (available at https://www.congress.gov/bill/117th-congress/house-bill/1100?q=%7B%22search%22%3A%5B%22H.R.+1100%22%2C%22H.R.%22%2C%221100%22%5D%7D&s=1&r=1 ) (last accessed, May 31, 2022).[7]  .

Recognizing the unworkability of applying Title III of the ADA to website accessibility lawsuits (as evidenced the by the patchwork of inconsistent rulings in courts across the country), the Proposed Act would take websites out of Title III of the ADA and create a new Title VI devoted specifically to "consumer facing websites," which the Proposed Act defines as "any website that is purposefully made accessible to the public for commercial purposes."  Proposed Act § 604.

---

[7] The proposed Online Accessibility Act is a matter of public record.  Accordingly, the Court can take judicial notice of the pending legislation "not for the truth of the matters asserted" but rather to establish the fact of such legislation has been introduced and for what is in the bill.  *See Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 278 (S.D.N.Y. 2013) ("I may take judicial notice of these materials—for the fact that they exist and for what is in them, but not for their truth—because they are public documents."); *see also Dorsett v. Cnty. of Nassau*, No. 11-CV-5748 SJF GRB, 2013 WL 272796, at *1 (E.D.N.Y. Jan. 24, 2013), *aff'd*, 732 F.3d 157 (2d Cir. 2013).

The Proposed Act is rooted in the premise that a predictable regulatory environment is critical for businesses.   Among other things, the bill's bipartisan sponsors recognize that compliance can be extremely costly and perfection is impossible to achieve when it comes to website accessibility.   Accordingly, the Proposed Act would require "substantial" compliance with the prevailing guidelines for accessibility.[8]   One of the more consequential elements of the Proposed Act is its requirement of the exhaustion of administrative remedies designed to give businesses the opportunity to remedy any alleged accessibility barriers before being sued.[9]  Only after exhausting the administrative remedies (and assuming the DOJ does not bring a civil action), would an individual claiming denial of access be permitted to file a civil action.   However, the plaintiff would have to plead each element of the claim with particularity, including the specific barriers to access.

The very fact that the Proposed Act was introduced bolsters the argument in Section II (B) above that applying Title III of the ADA to websites is unworkable, and that Title III was never meant to apply to websites.

## III.   PLAINTIFF'S NYCHRL CLAIM SHOULD BE DISMISSED

Because Plaintiff lacks standing under the ADA, he also lacks standing on his NYCHRL claim, and that claim too should be dismissed. *Winegard*, 556 F. Supp. 3d at 183 ("Having dismissed the federal claims, I decline to exercise supplemental jurisdiction over the state-law claims"); *Lopez v. W. Elm, Inc.*, No. 19 CIV. 10079 (ER), 2020 WL 6546214, at *3 (S.D.N.Y.

---

[8] Specifically, the bill would codify the truism that a website or mobile application should be considered accessible if it is in substantial compliance with WCAG 2.0 AA or any subsequent update, revision, or replacement standard published by the WC3.
[9] Under the Proposed Act, an individual claiming denial of access would first have to notify the owner or operator of the website or mobile application that the website or app is not in compliance with the established standard. If the business fails to bring the website or app into compliance within 90 days, the individual can then file a complaint with the DOJ, which will investigate whether a violation exists and issue a final determination. If the DOJ finds discrimination, it may file a civil lawsuit for injunctive relief and damages, including civil penalties of $20,000 for initial, and $50,000 for subsequent, violations.

Nov. 6, 2020); *Range v. 230 W. 41st St. LLC*, No. 17 CIV. 149 (LAP), 2020 WL 3034800, at *7

(S.D.N.Y. June 5, 2020) ("NYSHRL claim rises or falls with the ADA claim"); *Mendez v. Apple*

*Inc.*, No. 18 CIV. 7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019).

## **CONCLUSION**

For the foregoing reasons, MOO Organic respectfully requests that the Court dismiss the

FAC with prejudice and without leave to amend.


Dated: New York, New York
　　　July 26, 2022

　　　　　　　　　　　　　　　　BLANK ROME LLP

　　　　　　　　　　　　　　　　By: */s/ Martin S. Krezalek*
　　　　　　　　　　　　　　　　1271 Avenue of the Americas
　　　　　　　　　　　　　　　　New York, New York 10020
　　　　　　　　　　　　　　　　Tel. (212) 885-5000
　　　　　　　　　　　　　　　　martin.krezalek@blankrome.com
　　　　　　　　　　　　　　　　*Attorneys for Defendant MOO Organic*
　　　　　　　　　　　　　　　　*Chocolates, LLC*