UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

VICTORIANO TAVAREZ, Individually, and    Civil Action No.: 1:21-cv-9816 (VEC)
On Behalf of All Others Similarly Situated,

               Plaintiff,

     vs.

MOO ORGANIC CHOCOLATES LLC,

               Defendant.

——————————————————— x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Pages**

I.    INTRODUCTION………………….…………………………………………...1

II.   STATEMENT OF FACTS…………………………………………………...3

III.  LEGAL STANDARDS….…………………………………………………...4

IV.   ARGUMENT……………………………………..….……………………5

       A. The FACAC Properly Pleads an ADA CLAIM ......……………….............5

       B. The Website is a Place of Public Accommodation. ..…………….........6

       C. Defendant's Out of District Citations are Unpersuasive…………….....12

       D. The Proposed, Unenacted Legislation Must be Ignored …………….....14

       E. The FACAC's NYCHRL Claim Survives as Well. ..…………….........15

V.    CONCLUSION………………………………….....……..……………....16

## **TABLE OF AUTHORITIES**

**Pages**

**CASES**

*Access Now, Inc. v. Blue Apron, LLC*, Civil No 17-cv-116-JL, 2017 WL 5186354
(D.N.H. Nov. 8, 2017) .................................................................................. 13

*Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381 (E.D.N.Y. 2017)........................... 5, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 4

*Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 WL 7291226 (S.D.N.Y. Dec.
30, 2019) ...................................................................................................... 16

*Calcano v. Swarovski N. Am Ltd.*, 36 F.4th 68 (2d Cir. 2022) ...................................... 12

*Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF), 2019 WL 6528974 (S.D.N.Y.
Dec. 4. 2019)................................................................................................ 12

*Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12 (1st Cir. 1994) ........................... 13

*De La Rosa v. Lewis Foods of 42nd St.,* 124 F. Supp.3d 290, S.D.N.Y. 2015)............................ 12

*Del-Orden v. Bonobos Inc.*, 17 Civ. 2744 (PAE), 2017 WL 6547902  (S.D.N.Y. Dec.
20, 2017) .................................................................................................. 8, 11

*Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999) .................................... 12

*Dominguez v. Banana Republic, LLC*, 1:19-cv-10171-GHW, 2020 WL 1950496
(S.D.N.Y. April 23, 2020)................................................................................ 9

*Dominguez v. Grand Lux Café LLC*, No. 19-cv-10345 (MKV), 2020 WL 3440788
(S.D.N.Y. June 22, 2020)................................................................................ 12

*Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998) .................................... 14

*Gniewkowski v. Lettuce Entertain You Enters.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017) .............. 14

*Jaquez v. Dermpoint*, 20-cv-7589 (JPO), 2021 WL 2012512 (S.D.N.Y. May 20,
2021) ........................................................................................................ 9

*Lopez v. Arby's Franchisor, LLC*, 19-CV-10074 (VSB), 2021 WL 878735 (S.D.N.Y.
Mar. 8, 2021)............................................................................................... 9

*Lorillard v. Pons*, 434 U.S. 575, 98 S Ct. 866, 55 L.Ed. 2d 40 (1978) ........................ 15

*Markett v. Five Guys Enters. LLC*, 17-cv-788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017)................................................................................................... 2

*Martinez v. Mylife.com, Inc*., 21-cv-4779 (MBC), 2012 WL 5052745 (E.D.N.Y. Nov. 1, 2021) ................................................................................................................. 6

*McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200 (2d Cir. 2007) .................................. 16

*Mejico v. Alba Web Designs, LLC*, 515 F. Supp. 3d 424 (W.D. Va. 2021)................................. 13

*Mendez v. Apple Inc.*, 17 Civ. 7550 (LAP), 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019) .................................................................................................................... 12

*Morgan v. Joint Admin Bd., 268 F.3 456, 459 (7th Cir. 2001)* ....................................... 12

*Paguada v. Athena Allergy, Inc.*, 21-Cv-1245 (KPF) (S.D.N.Y. Feb. 22, 2022) ......................... 9

*Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28 (2d Cir. 1999)................................. 1, 6, 8

*Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed. 2d 132 (1989)..................................................................................................... 15

*Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633 (1990) ................................. 14

*Peoples v. Discover Financial Services*, 387 Fed. Appx. 179 (3d Cir. 2010) ......................... 14

*Romero v. 88 Acres Foods, Inc.*, 20-CV-9215 (KMW), 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022).......................................................................................... *passim*

*Sanchez v. Nutco, Inc*., 20-cv-10107 (JPO), 2022 WL 846896 (S.D.N.Y. Mar. 22, 2022) ................................................................................................... 4, 11

*Sanchez v. Webull Financial LLC*, No. 1:21-cv-930 (ER) (S.D.N.Y. June 9, 2021)................... 10

*Sanchez v. Welcome Skateboards, Inc.*, 1:21-cv2598 (KPF), Docket No. 35 (S.D.N.Y., Jan. 27, 2022)................................................................................. 11

*South Dakota v. Wayfair, Inc.*, 585 U.S. __, 138 S. Ct. 2088 (2018) ........................... 10

*Sullivan v. Study.com LLC*, 18-cv-1939 (JPO), 2019 WL 1299966 (S.D.N.Y. Mar 21, 2019) ....................................................................................................... 5

*Thorne v. Boston Mkt. Corp*., 469 F. Supp. 4d 130 (S.D.N.Y. 2020)......................... 4, 5

*Thorne v. Formula 1 Motorsports, Inc.*, 19-cv-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019)................................................................................ 5, 9

*Wilson v. Jord Inc.*, No. 20-CV-1899-LJV-JJM, 2022 WL 954421 (W.D.N.Y. Mar. 30, 2022) ................................................................................................. 16

*Wilson v. Twitter*, No. 3:20-cv-00054, 2020 WL 3410349 (S.D.W. Va. May 1, 2020) ............... 10

*Winegard v. Crain Comms., Inc*., 20-cv-01509 (AJN), 2021 WL 1198960 (S.D.N.Y. Mar. 30, 2021) ................................................................................................................ 9

*Winegard v. Newsday LLC*, 19-cv-04420(EK)(RER), 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021) ................................................................................................................ 6

*Wu v. Jensen-Lewis Co*., 345 F.supp.3d 438 (S.D.N.Y. 2018) ...................................................... 4

*Zarda v. Altitude Express, Inc.*, 883 F3.d 100 (2d Cir. 2018) ...................................................... 14

**STATUTES**

42 U.S.C. § 12181 *et seq.* ................................................................................................ *passim*

N.Y.C. Admin. Code § 8-101, *et seq.* ................................................................................4

 **RULES**

Fed. R. Civ. P.  12(b)(6) ................................................................................................ *passim*

28 C.F.R. § 35 app. A (2010) ........................................................................................... 10

Plaintiff Victoriano Tavarez ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant Moo Organic Chocolates LLC's ("Defendant") motion to dismiss ("Motion to Dismiss").

## I.    INTRODUCTION

The question raised by Defendant in its Motion to Dismiss – of whether a website itself constitutes a place of public accommodation under the Americans with Disabilities Act ("ADA") – is definitively not a matter of first impression for courts in this district.  It is rehashed by defendants in ADA matters over and over and, since 2017, been addressed by eight different S.D.N.Y. judges, and none of them (including two decisions earlier this year) have found Defendant's argument convincing, while also rejecting those same arguments adopted by two judges in the E.D.N.Y.

The Motion to Dismiss should be denied as it chooses to tactically ignore or selectively misinterpret numerous well-reasoned decisions issued by judges in the Southern District of New York regarding the ADA and website-accessibility, which have uniformly interpreted *Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28, 32 (2d Cir. 1999) to find that standalone websites **are under the purview of the ADA** as "places of public accommodation."  Indeed, stated differently, none of the many S.D.N.Y. judges who have examined this question have ever found that a standalone website is **not** under the ADA's purview.  Defendant's argument about foreign jurisdictions finding that websites are exempt from the ADA is similarly unpersuasive.

Although the Motion to Dismiss acknowledges that there are cases hostile to Defendant's position o this issue, the citations to S.D.N.Y. cases regarding this question are quoted (or not cited) selectively.  Judge Forrest ruled in July of 2017 that "the text and purposes of the ADA, as well as the breadth of federal appellate decisions, suggestion that defendant's website is covered

under the ADA." *Markett v. Five Guys Enters. LLC*, 17-cv-788 (KBF), 2017 WL 5054568, at *2 (S.D.N.Y. July 21, 2017); *cf.* Def. Mem. at 11.[1] Indeed, from 2017 until the present, no SDNY judge to examine this question has found Defendant's argument compelling. This was reaffirmed again this past year by Senior Judge Kimba Wood in *Romero v. 88 Acres Foods, Inc.*, 20-CV-9215 (KMW), 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022) ("*88 Acres*). The court in *88 Acres* vigorously analyzed the Second Circuit caselaw, the caselaw of other circuits, and also forcefully distinguished the Eastern District of New York cases, finding that Defendant's logic would lead to an "absurd result." *See id.* *5-6, *7.

Failure to contend with the numerous adverse decisions on this issue, at a minimum, renders Defendant's Motion to Dismiss misleading. Defendant's argument is thus nothing more than a boilerplate repetition that eight separate Southern District Judges have been uniformly "getting it wrong" since 2017.

Moreover, Defendant grasps at straws when it relies on an unpassed, lone bill in Congress, which at this point has not even been passed out of subcommittee. Oddly enough, Defendant makes a major concession in its argument – namely, that the bill is unpassed and seeks to "take websites out of Title III of the ADA," which confirms that at this time websites are indeed under the purview of the ADA. Def. Mem. at 17.

*Finally*, because Defendant has failed to establish grounds for dismissal of Plaintiff's ADA claims, Defendant's attempts to dispose of this Court's supplemental jurisdiction over the New York City Humans Right Law ("NYCHRL") claim also fails.

Accordingly, the Motion to Dismiss should respectfully be denied in its entirety.

---

[1]      "¶__" means a citation to paragraph numbers in the FACAC. "Def. Mem." refers to Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 32).

## II.    STATEMENT OF FACTS

Defendant is an online retail company that owns and operates the Website, www.moo chocolates.com ("Website").  ¶¶2, 20.  The Website offers snack products for sale to consumers in New York including chocolate bars and graham crackers. ¶20.  Plaintiff is a visually-impaired and legally blind person who uses screen-reading software in order to read website content using her personal computer. ¶¶1, 22.  Plaintiff made several visits to the Website, including on June 27, 2021, and through June 2022.  ¶2.  Plaintiff attempted to transact business on Defendant's Website by purchasing the chocolate offered by Defendant.  ¶24.  Plaintiff was unable to successfully complete a purchase because the Website was not compliant with the current ADA accessibility standards and contained/contains specific issues both at the time Plaintiff browsed the Website and as of the date of the filing of the FACAC.  ¶25.  Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the services offered to the general public on the Website. ¶¶9, 22, 25. These barriers include, without limitation (collectively, the "Access Barriers"):

- The screen reader fails to read pop up links. The website then requires the use of the cursor to close the pop up, impeding Plaintiff's ability to navigate to the website's homepage as a sighted New York customer would;

- The screen reader fails to describe the images of selected products, interpreting these only as "link." This impedes Plaintiff's ability to make an informed choice as to the chocolate based snack product to purchase as a sighted New York customer would;

- Screen reader reads phone numbers on the website as a random string of digits without context. This impedes Plaintiff's ability to make a purchase as a sighted New York customer would; and

- When selecting a product, the screen reader fails to read the quantity function, interpreting this information as "edit 1". This impedes Plaintiff's ability to make a purchase as a sighted New York customer would.

    ¶¶2, 23.

While Plaintiff was denied equal access to the Website, Plaintiff maintains a strong desire to purchase the chocolate offered by Defendant. Plaintiff remains expectant that the accessibility barriers will be cured expeditiously, as Plaintiff unequivocally intends to return to the website in order to complete the desired purchase as soon as the accessibility barriers are cured.  ¶24.

Based on these allegations, the FACAC adequately alleges Defendant's violations of 42 U.S.C. § 12181, *et seq*. – Title III of the ADA, and the NYCHRL, N.Y.C. Admin. Code § 8-101, *et seq*.

## III.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Sanchez v. Nutco, Inc*., 20-cv-10107 (JPO), 2022 WL 846896, at *5 (S.D.N.Y. Mar. 22, 2022) ((quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff properly pleads such facial plausibility by including "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id* at *15.  All reasonable inferences are drawn in the plaintiff's favor.  *Id*.  To survive dismissal, "plaintiff must provide the grounds upon which his claims rest through factual allegations sufficient to raise a right to relief above the speculative level" (internal citations omitted). *Id*.

To state a valid claim under Title III of the ADA, a plaintiff must allege that "(1) she is disabled withing the meaning of the ADA; (2) defendant's own, lease or operate a place of public accommodation; and (3) defendant discriminated against her be denying her a full and equal opportunity to enjoy the services defendants provide." *Thorne v. Boston Mkt. Corp*., 469 F. Supp. 4d 130, 139 (S.D.N.Y. 2020) (citing *Wu v. Jensen-Lewis Co*., 345 F.supp.3d 438, 442 (S.D.N.Y. 2018).

Likewise, the elements to plead a claim under the NYCHRL in a website-accessibility action are substantively similar to the above standard.  The NYCHRL is given an "independent liberal construction analysis in all circumstances" given its similar wording to the ADA, as well as the fact that "federal and state civil rights laws provide a floor below which the City's Human Rights law cannot fall." *Thorne v. Formula 1 Motorsports, Inc.*, 19-cv-1077 (JPO), 2019 WL 6916098, at *3 (S.D.N.Y. Dec. 19, 2019) (quoting *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 400 (E.D.N.Y. 2017)); *see also Sullivan v. Study.com LLC*, 18-cv-1939 (JPO), 2019 WL 1299966 (S.D.N.Y. Mar 21, 2019) ("The NYCRL [is] governed by the same legal standards that courts apply to ADA disability discrimination claims") (citations omitted).  Thus, it follows perforce that because the Complaint properly pleads a claim under the ADA, it also properly states a claim under the NYCHRL. *See id*.

## IV.   ARGUMENT

### A.  THE FACAC PROPERLY PLEADS AN ADA CLAIM

To state a valid claim under Title III of the ADA, a plaintiff must allege that "(1) she is disabled withing the meaning of the ADA; (2) defendant's own, lease or operate a place of public accommodation; and (3) defendant discriminated against her be denying her a full and equal opportunity to enjoy the services defendants provide." *Boston Mkt. Corp*., 469 F. Supp. 4d at, 139 (S.D.N.Y. 2020).

The FACAC properly pleads, and Defendant does not dispute, the first and third elements. Plaintiff is a visually-impaired and legally blind person. ¶1. Plaintiff likewise pleads that the barriers on website denied HIM full and equal access to the chocolate snacks offered by Defendant to the general public. ¶22.  Additionally, as discussed *infra*, Defendant's website is a place of public accommodation. ¶13.

-5-

## B.  THE WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION

Websites in and of themselves are places of public accommodations under the ADA.  This settled legal principle (supported by eight S.D.N.Y. district judges, six of whom Defendant failed to cite or analyze) logically flows from the findings of the Second Circuit in *Pallozzi v. Allstate Life Ins, Co*., 198 F.3d at 32, which held that Title III's mandate ensures:

> full and equal enjoyment of the goods [and] services . . . of any place of public accommodation" to disabled individuals, which suggests that "the statute was meant to guarantee [disabled individuals] ***more than mere physical access***.

 (Emphasis added).

*Pallozzi's* holding that business transactions with the public are what defines a public accommodation– regardless of whether they are conducted physically in a store or by some another means unrelated to a physical location – are covered by Title III contradicts Defendant's assertion that Congress chose not to regulate commerce that occurs on websites. Based on this reasoning, courts in this District, and others throughout this Circuit, have emphasized that it is the sale of goods and services to the public – and not the location of the transactions– that matters when assessing whether the protections of the ADA apply. *See 88 Acres*, 2022 WL 158686, at *6-7.

While some other (non-S.D.N.Y.) district judges, and foreign circuit courts, have issued rulings on this matter, Senior Judge Wood in *88 Acres* issued a comprehensive rejection of the "brick-and-mortar" standard.  This decision unequivocally held that "websites qualify as places of public accommodation, albeit electronic ones, and as such are required to provide equal services to visually impaired and sighted people." *Id.* at *6.  After a thorough analysis of foreign circuits, including the Third, Sixth and Ninth Circuit, as well as the E.D.N.Y. decisions in *Martinez v. Mylife.com, Inc*., 21-cv-4779 (MBC), 2012 WL 5052745 (E.D.N.Y. Nov. 1, 2021) and *Winegard v. Newsday LLC*, 19-cv-04420(EK)(RER), 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021), Judge Wood wrote "[t]his Court does not find *Winegard's* reasoning compelling." *Id*. at *5-7.

Specifically, looking to the language of Section 12181(7) of the ADA, Judge Wood found that in addition to listing physical places such as restaurants, hotels, and gymnasiums as covered accommodations, other entities such as "travel services" were listed. *Id.* at *6. Additionally, Judge Wood noted that the relevant section lists "other sales or retail establishments" as covered entities. These additions must indicate that non-physical retailers are covered for otherwise, *88 Acres* held, one could come out with the "absurd result that people with disabilities are protected if they shop in-store at Whole Foods, but not if they shop online at Whole Foods." *Id.* at *7. Judge Wood further noted that the Congress intended to "integrate [disabled individuals] into the economic and social mainstream of American life," and "that the types of accommodations and services provided to individuals with disabilities, under all titles of this bill, should keep pace with the rapidly changing technology of the times." *Id.* (citations omitted). From this language, it is clear Congress intended to regulate entities which directly provide goods and services to the general public, not solely the entities which physically did so in 1990, nor was it Congress' intent to shunt the disabled community into those separate, specific institutions.

Rejecting the E.D.N.Y.'s reasoning, the court in *88 Acres* then determined that the constructions *noscitur a sociis* and *ejusdem generis*, should be read in the context of this catch-all clause regarding service and other retail establishments as encompassing non-brick-and-mortar sales establishments. *Id.* at *7. Furthermore, Judge Wood analyzed the legislative history of the ADA, noting that Congress intended that the "types of accommodation and services provided to individuals with disabilities . . .should keep pace with the rapidly changing technology of the times." *Id.* at *7. This applies to the large volume of interstate commerce transacted through websites. *Id.* Given the prominence of online retail establishments in providing goods and services

directly to customers, Congress' intent in passing the ADA would be stymied were public accommodations limited to physical spaces.

Indeed, Judge Wood's ruling is the culmination of a long series of rulings by Southern District Judges.  Following the seminal holding by the Second Circuit in *Pallozzi*, 198 F.3d at 32, Judge Engelmayer held in *Del-Orden v. Bonobos Inc.*, 17 Civ. 2744 (PAE), 2017 WL 6547902, at *7 (S.D.N.Y. Dec. 20, 2017).

> A commercial website itself qualifies as a place of public accommodation to which Title III of the ADA affords a right of equal access." To hold otherwise, "Congress's purposes in adopting the ADA would be frustrated were the term public accommodation given a narrow application under which access to the vast world of Internet Commerce would fall outside the statute's protection.

Given this unequivocal language, much of Defendant's motion is dedicated to trying to cloud this clear holding by focusing on the supposed distinction between the phrases "*of* any place" versus "*in* any place." Def. Mem. at *13. This blithely ignores the critical sections of Judge Engelmayer's analysis.

> The Court reads the ADA, like other broadly worded statutes, to reflect an intentional effort to confer the flexibility necessary to forestall obsolescence. The fact that a statute can be applied in situations not expressly anticipated by Congress demonstrates its breath. . . For these reasons the Court holds that the term "public accommodation" in Title III extends to private commercial websites that affect interstate commerce.

*Del-Orden,* 2017 WL 6547902, at *10 (citations omitted).

Defendant's contention that "no such authority exists" that the term public accommodation in Title III does not apply to private commercial websites is thus wrong, and based on a willfully selective and blinkered reading of *Del-Orden*.

From *Del-Orden* through *88 Acres*, other courts of the Southern District have continuously held that arbitrarily excluding entities that sell and distribute goods and services digitally as

opposed to physical locations is both unworkable and not in keeping with the text and history of the statute.  These include:

- Judge Gregory Woods, *Dominguez v. Banana Republic, LLC*, 1:19-cv-10171-GHW, 2020 WL 1950496, at *9 (S.D.N.Y. April 23, 2020) ("[Requiring] some nexus between the website and the physical place of public accommodation is both unworkable and would produce absurd results.") (quoting *Blick Art Materials, LLC*, 268 F. Supp. 3d at 396);

- Judge Broderick, *Lopez v. Arby's Franchisor, LLC*, 19-CV-10074 (VSB), 2021 WL 878735, at *5 (S.D.N.Y. Mar. 8, 2021) ("a company's website is essentially a stand in for its brick-and-mortar business establishments.");

- Then-District Judge Nathan, *Winegard v. Crain Comms., Inc*., 20-cv-01509 (AJN), 2021 WL 1198960, at *2 (S.D.N.Y. Mar. 30, 2021) ("Defendant's website is a place of public accommodation.");

- Judge Oetken, *Jaquez v. Dermpoint*, 20-cv-7589 (JPO), 2021 WL 2012512, at *3 (S.D.N.Y. May 20, 2021) ("[M]ultiple district courts in this circuit-including this one-have held that websites qualify as places of public accommodation, even when they are not attached to a traditional brick-and-mortar store."); *see also Thorne v. Formula 1 Motorsports, Inc.*, 19-cv-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019); and

- Judge Failla, *Paguada v. Athena Allergy, Inc.*, 21-Cv-1245 (KPF) (S.D.N.Y. Feb. 22, 2022), Ex. A to the Kroub Decl. [2] ("I am not going to rehash the careful analyses of Judge Engelmayer in *Del-Orden* . . .or the others, in arriving at this conclusion. I simply concur with these

---

[2]     A true and correct copy of the decision in *Athena Allergy* is attached as Exhibit A to the Declaration of Edward Y. Kroub in support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Kroub Decl.").

analyses, which I find to be well-reasoned, and conclude that defendant's website is a place of

public accommodation under the ADA.")[3]

There is no ambiguity – in this District, commercial websites are places of public accommodation

under the ADA. [4]

    This reading is, in turn, supported by the Department of Justice of the United States, which

has indirectly indicated that the ADA should cover websites.  In guidance found in 28 C.F.R. § 35

app. A (2010), the DOJ notes the following:

> "Although the language of the ADA does not explicitly mention the Internet, the
> Department has taken the position that Title II covers Internet Web site access.
> Public entities that choose to provide services through web-based applications . . .
> or that communicate with their constituents or provide information through the
> Internet must ensure that individuals with disabilities have equal access to such
> services or information."

---

[3]    Similarly, in an oral argument at a premotion conference considering a similar motion to dismiss, Judge Ramos indicated that this argument was unpersuasive given the Southern District's caselaw:

THE COURT: And let me begin with Mr. Mizrahi, why don't you tell me a little bit about your case. Is this any different from the other website cases that have been filed in this district?

PLAINTIFF COUNSEL: From what I understand, defendant's main argument is that the website is not a place of public accommodation.

                *        *        *

THE COURT: Okay. Mr. Redburn [DEFENSE COUNSEL], I take it that you're very familiar with the case law in the Southern District by various of my colleagues. I am familiar with those cases; I tend to agree with the reasoning in those cases. But obviously there is a split in the circuits, so I can't say that your proposed motion is without merit or not colorable. However, it is likely that based on the arguments that have been made and the letters before me, likely that I would deny the motion. *Sanchez v. Webull Financial LLC*, No. 1:21-cv-930 (ER) (S.D.N.Y. June 9, 2021), ECF No. 18, pp. 2:22-3:13; 4:14-22.

[4]    Indeed, the Supreme Court of the United States, in interpreting the commerce clause, has derided rules like those proposed by Defendant based strictly on physical presence as an "arbitrary, formalistic distinction." Instead, the Supreme Court has held that "[m]odern e-commerce does not align analytically with a test that relies on …physical presence." *South Dakota v. Wayfair, Inc.*, 585 U.S. __, 138 S. Ct. 2088, 2092 (2018). This has been interpreted by other courts to apply to other anti-discrimination statutes, including Title II of the Civil Rights Act. "[T]here is growing recognition among the circuits that, in the analogous context of ADA discrimination claims, the remedial purpose of the federal civil rights statutes would be thwarted if courts were to continue adhering to a rigid distinction between virtual and physical commerce given the rapid modern expansion of virtual commerce and association." *Wilson v. Twitter*, No. 3:20-cv-00054, 2020 WL 3410349, at *9 (S.D.W. Va. May 1, 2020).

-10-

The holdings of the Southern District are thus unambiguous: the ADA covers websites in and of themselves as places of public accommodation.

Faced with this, Defendant's brief implies that the cases which preceded several decisions in the Eastern District of New York did not analyze the phrase "place of public accommodation" and find "no basis in the language of the statute". Def. Mem. at 12-15. This assertion, that the other eight other judges to analyze this issue, did not consider the text of the statue before finding is this reasoning rigid and unpersuasive, is both incorrect and does a great disservice to the analysis of the legislative text these judges provided. *See 88 Acres*, 2022 WL 158686, at *5-6; *see also Del-Orden*, 2017 WL 6547902, at *8 ("the term 'other sales or rental establishment' can be fairly read in today's world dominated by e-commerce to encompass a commercial website."). Moreover, Defendant's contrived argument fails to contend with Senior Judge Wood's analysis of the canons of statutory construction and legislative history of the ADA, in addition to the plaint language of the statute, as well as her comprehensive examination of the cases which have considered this question, including those from other circuit courts.

As Defendant's argument has never been persuasive in this District, Defendant must again resort to "unbecoming name calling" by repeatedly insinuating that the number of lawsuits Plaintiff and Plaintiff's counsel files constitute "hijack[ing] statutes". *See Sanchez v. Welcome Skateboards, Inc.*, 1:21-cv2598 (KPF), Docket No. 35, at 7:6-9 (S.D.N.Y., Jan. 27, 2022) (denying motion to dismiss filed by same defense counsel) Kroub Decl., Ex. B; Def. Mem. at *1; *see also Nutco*, 2022 WL 846896, at *2 (noting, "private enforcement suits are the primary method of obtaining compliance with the [ADA]").[5] As such, the Court should disregard these insinuations, and various

---

[5]     Courts in the Southern District concur that litigation history is neither factually nor legally relevant to Plaintiff's standing. Indeed, as this Court has held in *De La Rosa v. Lewis Foods of 42nd St.,* 124 F. Supp.3d 290, 293

paeans to "a predictable regulatory environment…critical for business." Def. Mem. at \*18.  This case must stand or fall on its own merits.

## C.  DEFENDANT'S OUT OF DISTRICT CITATIONS ARE UNPERSUASIVE

Defendant focuses on foreign jurisdictions to suggest that every other S.D.N.Y. ruling to consider this question is a poorly reasoned anomaly.  This is false and unpersuasive.

For example, the Seventh Circuit also refused to limit its interpretation of places of public accommodation to physical locations, and when the seminal case in that Circuit came to pass, the Supreme Court of the United States denied certiorari. *See Doe v. Mutual of Omaha Ins. Co*., 179 F.3d 557, 559 (7th Cir. 1999) (cert. denied) ("The core meaning of this provision, plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility, (whether in physical space or in electronic space) that is open to the public cannot exclude disabled persons from entering the facility and one in, from using the facility."); *see also Morgan v. Joint Admin Bd*., 268 F.3 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation…What matters is that the good or service

---

n.5 (S.D.N.Y. 2015) ("[T]his fact does not affect the Court's analysis . . . . It is by no means difficult to imagine that a wheelchair-bound New York City resident encounters illegal barriers to access at many places of public accommodation on a regular basis or that such a person would continue to use the attorney with whom she has a relationship when trying to make New York more accessible for all."); *see also Dominguez v. Grand Lux Café LLC*, No. 19-cv-10345 (MKV), 2020 WL 3440788, at \*4 (S.D.N.Y. June 22, 2020) ("There is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical.") (quoting *Mendez v. Apple Inc.*, 17 Civ. 7550 (LAP), 2019 WL 2611168, at \*4 (S.D.N.Y. Mar. 28, 2019)); *see also Camacho v. Vanderbilt Univ*., 18 Civ. 10694 (KPF), 2019 WL 6528974, at \*11 (S.D.N.Y. Dec. 4. 2019) ("[A] [p]laintiff does not lack standing merely because he believes he has been similarly injured by other [defendants]."); *see also Romero v. Zip Top, LLC*, 20-cv-10189 (LJL) (S.D.N.Y. Aug. 13, 2021); *cf. Calcano v. Swarovski N. Am Ltd*., 36 F.4th 68, 77-78 (2d Cir. 2022) (finding plaintiff's frequent filings implausible where they produced errors, oddities and omissions in the complaints, such as a plaintiff's assertion they would return to a Kohls store that did not exist, or that Banana Republic, a clothing retailer, sold food. There is no allegation of such a factual error here.).

be offered to the public"). The First Circuit concurred, "The plain meaning of the terms do not require 'public accommodations' to have physical structures for persons to enter...By including "travel service" among the list of services considered 'public accommodations,' Congress clearly contemplated that "service" establishments" include providers of services which do not require a person to physically enter an actual physical structure." *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 19 (1st Cir. 1994).

Similar decisions have been issued by various federal district courts in several circuits. *See, e.g.*, *Mejico v. Alba Web Designs, LLC*, 515 F. Supp. 3d 424, 433 (W.D. Va. 2021) ("[P]laces of public accommodation are not limited to physical, brick-and-mortar establishments and instead include commercial websites that offer good [sic] and services. The fact that [defendant] has no physical location open to the public is not dispositive"); *see also Access Living of Metro Chi. v. Uber Techs., Inc.*, 351 F. Supp 3d 1141, 1156 (N.D. Ill. 2018) (finding "[a] place of public accommodation does not have to be a physical space and plaintiffs have plausibly alleged that Uber [a digital phone app] operates a place of public accommodation"); *see also Access Now, Inc. v. Blue Apron, LLC*, Civil No 17-cv-116-JL, 2017 WL 5186354, at *5 (D.N.H. Nov. 8, 2017) ("Recognizing that structural barriers may prevent individuals with disabilities from accessing and fully engaging with websites, the DOJ has construed websites as 'places of public accommodation' under Title III of the ADA for over 20 years"); *see also Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp 2d 196, 200-01 (D. Mass. 2012) ("In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public...").

By contrast, even districts in circuits that initially interpreted the ADA to require strict ties to physical locations are abandoning this interpretation as online commerce becomes ubiquitous. *See Gniewkowski v. Lettuce Entertain You Enters*., 251 F. Supp. 3d 908 (W.D. Pa. 2017) (holding that plaintiff properly pled a claim under Title III of the ADA because there was no question defendant owned the website containing the access barriers); *cf. Ford v. Schering-Plough Corp*., 145 F.3d 601 (3d Cir. 1998); *Peoples v. Discover Financial Services*, 387 Fed. Appx. 179 (3d Cir. 2010).

Thus, whether Defendant's Website is connected to a physical place of business is immaterial for the purposes of the ADA.

### D.  THE PROPOSED, UNENACTED LEGISLATION MUST BE IGNORED

A significant portion of Defendant's motion papers relies on the fact that several members of Congress have introduced a bill in the United States House of Representatives seeking to change the ADA. Def. Mem at 15-16. This individual bill, which at time of writing has not even been passed out of subcommittee,[6] does not shed any light on how this Court should interpret the ADA now.

Subsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress, particularly when if concerns a proposal that does not become law. *See Zarda v. Altitude Express, Inc.*, 883 F3.d 100, 130 (2d Cir. 2018) (citing *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633 (1990)). It is impossible to assert with any degree of assurance that congressional

---

[6]     Available at:

https://www.congress.gov/bill/117th-congress/house-bill/1100?q=%7B%22search%22%3A%5B%22Online+accessibility+act%22%2C%22Online%22%2C%22accessibility%22%2C%22act%22%5D%7D&s=1&r=1 (last accessed August 3, 2022)

failure to act represents affirmative congressional approval of a particular statutory interpretation. *Id.* (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed. 2d 132 (1989)).  As such, this bill, which has not been passed into law, represents the policy preferences of a few current members of Congress, not a duly promulgated law this Court is bound by.  The Court must interpret statutes and laws that have already passed, proposed legislation is not the enacted will of the Congress. *See also Lorillard v. Pons*, 434 U.S. 575, 581, 98 S Ct. 866, 55 L.Ed. 2d 40 (1978) ("Where…Congress *adopts a new law* incorporating sections of a prior law, Congress can normally be presumed to have had knowledge of the interpretation given to the incorporated law, at last insofar as it affects the new *statute*.") (emphasis added).

Indeed, notwithstanding Defendant's preferences as to what the law *ought to* be, Defendant's own argument concedes that the ADA, as it stands today, covers websites. "[T]he Proposed Act *would take websites out of Title III of the ADA* and create a new Title VI devoted specifically to 'consumer facing websites.'" Def. Mem. at 17.  This is an implicit concession in Defendant's argument that the law should change – Defendant supports the proposed legislation because the current state of the law does not support its position.  As such, an unpassed bill sitting in a congressional subcommittee has no value in discerning the meaning of the ADA as actually enacted by the Congress and President, while Defendant's policy arguments as to why the law must change, necessarily implies that the law as it stands considers websites under the ADA's purview.

### E.  THE FACAC'S NYCHRL CLAIM SURVIVES AS WELL

For the reasons discussed above, Defendant's attacks on Plaintiff's NYCHRL claims should also fail.  Defendant asserts that the Court must likewise dismiss the New York City discrimination claims because Plaintiff lacks standing.  Def. Mem. at 18.  However, as

demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain

dismissal of the ADA claim at issue in this action under 12(b)(6). *See Bullard v. Drug Policy All.*,

18 Civ. 8081 (KPF), 2019 WL 7291226, at *7 (S.D.N.Y. Dec. 30, 2019) ("A court 'shall' exercise

supplemental jurisdiction if a supplemental claim is related to the claim within the court's original

jurisdiction such that they form the same case or controversy.") (citing 28 U.S.C. §1367(a)).

Accordingly, Defendant's request to obtain dismissal of the New York City claim should

likewise be denied.

## V.        CONCLUSION

For the reasons set forth above, the Court should respectfully deny the Motion to Dismiss

in its entirety.[7]

DATED:  New York, New York            **MIZRAHI KROUB LLP**
        August 5, 2022


                                     /s/ Edward Y. Kroub
                                  EDWARD Y. KROUB

                         EDWARD Y. KROUB
                         JARRETT S. CHARO
                         WILLIAM J. DOWNES
                         200 Vesey Street, 24th Floor
                         New York, NY  10281
                         Telephone:  212/595-6200
                         212/595-9700 (fax)
                         ekroub@mizrahikroub.com
                         jcharo@mizrahikroub.com
                         wdownes@mizrahikroub.com

                         *Attorneys for Plaintiff*

---

[7]        In the alternative, should the motion be granted, Plaintiff respectfully requests leave to replead.  *See Cortec Industries, Inc., v. Sum Holding L.P.*, 949 F.2d 42 (2d. Cir. 1991); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Wilson v. Jord Inc.*, No. 20-CV-1899-LJV-JJM, 2022 WL 954421, at *4 (W.D.N.Y. Mar. 30, 2022) (a recent website accessibility ruling on a motion to dismiss granting plaintiff leave to amend).