UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VICTORIANO TAVAREZ, on behalf of himself and all others similarly situated,

            Plaintiff,

  -against-

MOO ORGANIC CHOCOLATES LLC,

           Defendant.

Case No.: 1:21-cv-9816 (VEC)

---

**DEFENDANT MOO ORGANIC CHOCOLATES LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020

164818.00601/129333759v.1

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    THE CASES ON WHICH PLAINTIFF RELIES ARE NOT PERSUASIVE AND THIS COURT SHOULD NOT FOLLOW THEM ................2

        A.    The Southern District Cases Are Based on a Misinterpretation of Pallozzi ........................................................................................................2

        B.    This Court Should Not Follow the Minority View Applied in Other Circuits ..........................................................................................................3

        C.    The Court Should Not Follow Romero v. 88 Acres Foods, Inc. ...................5

    II.    THE PROPOSED ONLINE ACCESSIBILITY ACT SHOULD NOT BE IGNORED .............................................................................................................8

    III.    THE COURT SHOULD CERTIFY THE ISSUE FOR INTERLOCUTORY APPEAL ..............................................................................10

CONCLUSION .............................................................................................................................10

164818.00601/129333759v.1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arculeo v. On-Site Sales & Mktg., LLC*,
   321 F. Supp. 2d 604 (S.D.N.Y. 2004), *aff'd on other grounds*, 425 F.3d 193
   (2d Cir. 2005)......................................................................................................................2

*Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*,
   37 F3d 12 (1st Cir. 1994).............................................................................................5, 6, 8

*Doe v. Mutual of Omaha Ins. Co.*,
   179 F.3d 557, 559 (7th Cir. 1999) ...........................................................................................5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 524 (S.D.N.Y. 2014)....................................................................................10

*Gil v. Winn-Dixie Stores, Inc.*,
   993 F.3d 1266 (11th Cir. 2021) *vacated on other grounds by* 21 F.4th 775
   (11th Cir. 2021)....................................................................................................................4, 8

*King v. Burwell*,
   576 U.S. 473, 135 S. Ct. 2480, 192 L. Ed. 2d 483 (2015) (Scalia, J.,
   dissenting)..............................................................................................................................7

*Kloeckner v. Solis*,
   568 U.S. ——, ——,133 S.Ct. 596 ......................................................................................7

*Lamie v. U.S. Tr.*,
   540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004).................................................6, 7

*Lorillard v. Pons*,
   434 U.S. 575, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978).............................................................9

*Markett v. Five Guys Enters. LLC*,
   17-cv-788 (KBF), 2017 U.S. Dist. LEXIS 115212 (S.D.N.Y. July 21, 2017) .....................3, 4

*Martinez v. Cot'n Wash, Inc.*,
   No. B314476, 2022 WL 3025828, Cal. Ct. App. Aug. 1, 2022............................................4, 7

*Martinez v. MyLife.com*,
   No. 21-cv-4779-BMC (E.D.N.Y. Nov. 1, 2021) ............................................................ *passim*

*Martinez v. San Diego Cnty. Credit Union*,
   50 Cal. App. 5th 1048, 1062, 264 Cal. Rptr. 3d 600 (2020).....................................................4

*Morgan v. Joint Admin Bd.*,
    268 F.3 456, 459 (7th Cir. 2001) ...................................................................................5

*Pallozzi v. Allstate Life Insurance Co.*,
    198 F.3d 28 (2d Cir. 1999) (Pl. Br., ECF No. 33, ) ......................................................2, 3, 5, 6

*Robles v. Domino's Pizza, LLC*
    913 F.3d 898 (9th Cir. 2019), 905, cert. denied, 140 S. Ct. 122 (2019) ...........................4, 7, 8

*Romero v. 88 Acres Foods, Inc.*,
    20-CV-9215 (KMW), 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022) ............................... *passim*

*Suris v. Gannett Co.*,
    No. 20-CV-1793 (BMC), 2021 WL 2953218 (E.D.N.Y. July 14, 2021) ..................................2

*Winegard v. Newsday LLC*,
    No. 19-CV-04420(EK)(RER), 556 F.Supp.3d 173 (E.D.N.Y. Aug. 16, 2021).............2, 3, 7, 8

**Statutes**

28 U.S.C. § 1292(b) ......................................................................................................................10

42 U.S.C. § 12181(7) ......................................................................................................................6

ADA Title III ....................................................................................................................... *passim*

THE PROPOSED ONLINE ACCESSIBILITY ACT.........................................................8, 9

**Other Authorities**

Martin S, Krezalek, *DOJ's Failure To Provide Effective Guidance on Website Accessibility Requirements Under the ADA Leaves Congress as the Only Option To Address the Problem of Abusive Lawsuits*, N.Y. LAW JOURNAL (April 28, 2022) ...................................................................................................................10

Fed. R. Civ. P. 12(b)(6)....................................................................................................................1

Defendant Moo Organic Chocolates LLC ("Moo") submits this Reply Memorandum of Law in support of its Motion to Dismiss Plaintiff Victoriano Tavarez's ("Plaintiff") June 28, 2022 First Amended Complaint ("FAC"), pursuant to Fed. R. Civ. P. 12(b)(6).

## **PRELIMINARY STATEMENT**

The plain language of the ADA makes clear that public accommodations are limited to actual, physical places, and stand-alone websites do not qualify. As several judges within the Second Circuit have recently held, surviving dismissal in a website accessibility case requires a plaintiff to first satisfy the "place of public accommodation" test, which can be accomplished only by pleading a connection between the website barriers and a customer-facing physical location owned or operated by the defendant. Plaintiff cannot identify a place of public accommodation owned or operated by Moo, because none exists, and the FAC must be dismissed.

Plaintiff does not contest that the only two Circuit Courts of Appeals to address the issue refused to find that a website itself is a place of public accommodation. Plaintiff also concedes that the Second Circuit has never resolved the issue of whether a website constitutes a place of public accommodation. Plaintiff's entire argument amounts to an attempt to have this Court treat the recent decision by Judge Kimba Wood in *Romero v. 88 Acres Foods, Inc.*, 20-CV-9215 (KMW), 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022) as if it were a binding appellate precedent. But *88 Acres Foods*—along with the fistful of other district court decisions on which Plaintiff relies—were wrongly decided. Moo respectfully submits that it is not the Court's role to stretch the reach of Title III of the ADA beyond what Congress intended. As discussed in Moo's moving papers, Congress has begun the process of adding consumer websites under the purview of the ADA, albeit under a newly created Title VI, which, unlike Title III, acknowledges and addresses the unique challenges posed by serial filers of website accessibility cases. Because Title III of the ADA was never meant to apply to stand alone websites, the FAC should be dismissed.

**ARGUMENT**

I. **THE CASES ON WHICH PLAINTIFF RELIES SHOULD NOT BE FOLLOWED**

   A. **The Southern District Cases Are Based on a Misinterpretation of *Pallozzi***

Plaintiff contends that "[t]he holdings of the Southern District are [] unambiguous: the ADA covers websites in and of themselves as places of public accommodation." (Pl. Br. at 11). But it is an elementary "maxim that the decisions of district courts, even those located within the same district, are not binding on other district courts." *Arculeo v. On-Site Sales & Mktg., LLC*, 321 F. Supp. 2d 604, 609 (S.D.N.Y. 2004), *aff'd on other grounds*, 425 F.3d 193 (2d Cir. 2005). Plaintiff does not contest that the Second Circuit has never resolved the question of whether a website constitutes a "place of public accommodation," and the issue remains open. *Martinez v. MyLife.com*, No. 21-cv-4779-BMC (E.D.N.Y. Nov. 1, 2021); *Winegard v. Newsday LLC*, No. 19-CV-04420(EK)(RER), 556 F.Supp.3d 173, 174 (E.D.N.Y. Aug. 16, 2021); *Suris v. Gannett Co.*, No. 20-CV-1793 (BMC), 2021 WL 2953218, at *1 (E.D.N.Y. July 14, 2021).

The recent *Winegard*, *MyLife.com* and *Suris* decisions demonstrate that, after the Eleventh Circuit held that the ADA's plain language makes clear that "*public accommodations are limited to actual, physical places, and websites [do] not qualify*," courts in this circuit are no longer reflexively assuming that the ADA applies to stand-alone websites. *MyLife.com*, No. 21-cv-4779-BMC, at *6; *Winegard* 556 F.Supp.3d at 180; *Suris*, 2021 WL 2953218, at *2.

Plaintiff relies on cases from this district that were all (admittedly) based on the Second Circuit's decision in *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999) (Pl. Br., ECF No. 33, at 8-9). Plaintiff wrongly suggests that Moo's argument that these cases were wrongly decided is "boilerplate." (Pl. Br. at 2). Not so. As Moo established in its moving papers,

2

these cases were wrongly decided because they are wholly based on policy arguments,[1] and that contrary to those courts' holdings, *Pallozzi* does not compel a finding that Title III of the ADA applies to stand alone websites. Contrary to Plaintiff's mischaracterization of *Pallozzi*, the court did not hold that "*business transactions* – regardless of whether they are conducted physically in-store or outside of a business' premises – are covered by Title III." (Pl. Br. at 6) (emphasis added). Such an expansive reading would have no basis in the text of Title III, which says nothing about "business transactions." What *Pallozzi* focused on was the breadth of Title III's application to the *goods and services* of a place of public accommodation. The salient part of the court's holding is that the physical *place* test must first be identified before applying the ADA to goods and services of that physical place. (*See* Deft. Br. at 7-8). Indeed, as Judge Komitee recognized in *Winegard*, *Pallozzi* stands for the proposition that a business' goods and services (here, the Website) are not covered by the ADA unless the "place of public accommodation" test is satisfied. *Winegard*, 556 F.Supp.3d at 181 ("At most . . . *Pallozzi* supports the conclusion that websites are swept up in Title III *when they offer the same 'goods and services' as the business's brick-and-mortar operation*."); *MyLife.com*, No. 21-cv-4779-BMC, at *6 ("[neither] *Pallozzi* – nor its progeny – mandate or suggest any conclusion as to whether a stand-alone website, such as the one at issue here, is a place of public accommodation.").

        **B.**    **This Court Should Not Follow the Minority View Applied in Other Circuits**

Plaintiff relies on Judge Forrest's statement in *Markett v. Five Guys Enters. LLC*, 17-cv-788 (KBF), 2017 U.S. Dist. LEXIS 115212, at **5-6 (S.D.N.Y. July 21, 2017) that "the text and purposes of the ADA, *as well as the breadth of federal appellate decisions*, suggest[] that defendant's website is covered under the ADA." (Pl. Br. at 1-2) (emphasis added). But Plaintiff

---

[1] *See Winegard*, 556 F. Supp. 3d at 182 (recognizing that courts are "ill-equipped to make policy in the ADA context").

disingenuously ignores the only appellate decisions that ever directly addressed the issue of whether Title III of the ADA applies to websites themselves—all such decisions came <u>after</u> *Five Guys*.

Most recently, the California Court of Appeals undertook a painstaking analysis of the issue of whether a website is a place if public accommodation under Title III of the ADA. *See Martinez v. Cot'n Wash, Inc.*, No. B314476, 2022 WL 3025828, Cal. Ct. App. Aug. 1, 2022). In holding that websites were <u>not</u> places of public accommodation, the *Martinez* court found dispositive the fact that an opposite holding would embrace a view that Congress (through its inaction since the enactment of the ADA) and the DOJ (through its unwillingness to draft regulations) have both tacitly rejected. *Id*, at *12. The *Martinez* court also rejected the notion that the DOJ's non-regulatory statements (of the sort on which Plaintiff relies, *See* Pl. Br. at 10) support Plaintiff's position—holding that they support Moo's position instead. *See id*. at *14 ("we do not view the DOJ's willingness to support Martinez's proposed interpretation only in case-specific scenarios—while declining to adopt the position via rulemaking action—as weighing in favor of our adopting that interpretation. To the contrary, we conclude the DOJ's approach to the issue weighs against our adopting such an interpretation.").

And as discussed in Moo's moving papers (and not addressed by Plaintiff), the only federal Circuit courts of Appeal to address the issue (*Robles v. Domino's* in 2019, and *Gil v. Winn-Dixie* in 2021) similarly refused to hold that websites, in and of themselves, were public accommodations. (Deft. Br. at 13-15). Plaintiff instead petitions this Court to follow the <u>minority positions</u> of the First and Seventh Circuits. (Pl. Br., ECF No. 29, at 11); *see Martinez v. San Diego Cnty. Credit Union*, 50 Cal. App. 5th 1048, 1062, 264 Cal. Rptr. 3d 600, 609 (2020) (analyzing

4

cases and explaining that the "the minority view" among the federal circuits is that websites are public accommodations within the meaning of the ADA).[2]  This effort should be rejected.

The appellate court decisions, *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F3d 12, 19 (1st Cir. 1994) and *Morgan v. Joint Admin Bd.*, 268 F.3 456, 459 (7th Cir. 2001), which have driven those district court decisions within the First and Seventh Circuits finding that websites were public accommodations, did not address the issue of "if" and "when" websites could be subject to Title III of the ADA.  *Carparts* involved the question of whether defendant's cap on health benefits for individuals with AIDS represented illegal discrimination on the basis of a disability.  *Carparts*, 37 F.3d at 14.  The court did not even reach the issue of whether plaintiff pleaded a claim under Title III.  *Id*. at 20 ("We think that at this stage it is unwise to go beyond the possibility that the plaintiff may be able to develop some kind of claim under Title III even though this may be a less promising vehicle in the present case than Title I.").  *Morgan* involved a challenge to an amendment of a retirement plan which granted cost of living increase to early and normal retirees, but not to disability retirees.  *Morgan*, 268 F.3d at 457.   Such outdated and inapplicable out-of-circuit precedent should not impact this Court's decision.[3]

    **C.**    **The Court Should Not Follow *Romero v. 88 Acres Foods***

On January 18, 2022, in *Romero v. 88 Acres Foods, Inc.*, Judge Kimba Wood denied defendant's motion to dismiss.  *88 Acres* was the first post-*Winegard* district court case to address the issue presented here.  In *88 Acres*, the court acknowledged that whether a website is a place of "public accommodation" subject to ADA protection has not been decided by the Second Circuit.

---

[2] The *Martinez* court lumped the Second Circuit among the "minority view" *circuits*.  However, the *Martinez* court was referring to the several *district court decisions* which erroneously applied *Pallozzi* in finding that websites are places of public accommodation.  As discussed herein (and acknowledged by Plaintiff), the Second Circuit Court of Appeals has never taken a position on the issue of whether websites are places of public accommodation.
[3] Plaintiff's reliance on the dicta from the Seventh Circuit's decision in *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) is equally unavailing.  (PL. Br. at 12).  *Mutual of Omaha*, like *Pallozzi*, involved an insurance company, and there was no dispute about whether the place of public accommodation test was satisfied.

*88 Acres*, 2022 WL 158686, at *4.  Recognizing that there was a split among the district courts to have addressed the issue, the court noted that the judges which held that Title III applies to websites offering goods and services "relied upon *Pallozzi* in holding that the goods and services covered by the ADA are not limited to those sold at a physical location." *Id*. at *5.  But as Moo has demonstrated, *Pallozzi* does not support applying Title III of the ADA to stand alone websites.

The court then somehow found ambiguity in the text of Title III because the section of the statute which enumerated entities that qualified as "places of public accommodation" was silent as to websites. *Id*. at *6 (citing 42 U.S.C. § 12181(7)). Given this purported ambiguity, the court looked to the statute's purpose, legislative history, and context for guidance, and held that "[i]nterpreting the term place of "public accommodation" in light of the surrounding language supports holding that a website is a place of "public accommodation." *Id*. In reaching this conclusion, the court relied heavily on the First Circuit's decision in *Carparts*. *Id*.  The court noted that the *Carparts* court reasoned that "although the list of 'public accommodations' in section 12181(7) lists many physical places such as 'restaurants,' 'hotels,' and 'gymnasiums,' it also includes a service not limited to a physical place, 'travel service.'" *Id*.

Initially, Judge Wood's finding that the statutory text is ambiguous because websites did not yet exist is not logically sound.  Because websites did not exist, Congress could not possibly have directly intended for Title III of the ADA to apply to websites.  The question is whether Congress intended the term "place of public accommodation" to be interpreted so broadly so as to one day encompass a business's website.  "The starting point in discerning congressional intent is the existing statutory text . . ." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030, 157 L. Ed. 2d 1024 (2004).  "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to

6

enforce it according to its terms.'" *Id*. ("The statute is awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue"). But it is not ambiguous that Congress did not list any non-physical places. *See MyLife.com*, 2021 WL 5052745, at *2 ("Of the fifty specific examples of businesses contained within the ADA's definition of 'public accommodation', at least forty-nine indisputably relate to physical places."). Further, its utilization of the term "'place of' to modify the term 'public accommodation' leaves no doubt that Section 12182(a) was not meant to reach the website of a business . . ." *Winegard*, 556 F. Supp. 3d at 179.

Faced with the undeniable fact that the statute only lists physical places, Judge Wood reasoned that while "the items on this list could be interpreted to be limited to brick-and-mortar locations, that interpretation would lead to the absurd result that people with disabilities are protected if they shop in-store at Whole Foods, but not if they shop online at Whole Foods." *88 Acres*, 2022 WL 158686, at *7. But even if that were the case, "even the most formidable argument concerning [a] statute's purposes [cannot] overcome the clarity [of] the statute's text." *King v. Burwell*, 576 U.S. 473, 510, 135 S. Ct. 2480, 2502, 192 L. Ed. 2d 483 (2015) (Scalia, J., dissenting) (*quoting Kloeckner v. Solis*, 568 U.S. ——, ——, n. 4, 133 S.Ct. 596, 607, n. 4, 184 L.Ed.2d 433 (2012). The *88 Acres* holding (like Plaintiff's entire argument) is really based on the "purpose" of the ADA, and the supposed absurdity in limiting its reach to comport with its language. (Pl. Br. at 8). But as the *Martinez* court recognized, "not everything that is consistent with the goal of Title III can be found in the language of that statute." *Cot'n Wash, Inc.*, 2022 WL 3025828, at *12. Neither Judge Wood in *88 Acres*, nor Plaintiff in his papers, provide a compelling argument for why interpreting Title III to require *first satisfying the physical place test* as Congress intended would be absurd.[4]

---

[4] Indeed, the Whole Foods analogy contemplated by Judge Wood is entirely inapposite. In that scenario the plaintiff would likely be able to satisfy the physical place test since Whole Foods operates customer facing places of public

Further, in deciding *88 Acres*, Judge Wood placed undue reliance on *Carparts*. *Carparts* addressed the interpretation of the unrelated term "travel services" under the ADA's definition of public accommodation. *Id*. at 19. The court opined that, "[b]y including 'travel service' among the list of services considered 'public accommodations,' Congress clearly contemplated that 'service establishments' include providers of services which do not require a person to physically enter an actual physical structure" because "[m]any travel services conduct business by telephone or correspondence without requiring their customers to enter an office in order to obtain their services." *Id*. But there is no suggestion in the ADA (or in logic) that a travel service contemplates a virtual operation. [5] More importantly, *Carparts* is a First Circuit Court of Appeals case *from twenty-seven years ago*, which was well known and considered by far more recent Circuit Court decisions dealing with consumer websites specifically. *See Robles v. Domino's Pizza, LLC* 913 F.3d 898 (9th Cir. 2019), 905, cert. denied, 140 S. Ct. 122 (2019); *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir. 2021) *vacated on other grounds by* 21 F.4th 775, 776 (11th Cir. 2021). This Court is not compelled to follow *88 Acres*, nor should it.

## II. THE PROPOSED ONLINE ACCESSIBILITY ACT SHOULD NOT BE IGNORED

Plaintiff disingenuously argues that Moo's description of the Proposed Act amounts to a concession that "the ADA, as it stands today, covers websites." (Pl. Br. at 15). Nothing could be

---

accommodation. To the extent Whole Foods' website connects customers to the goods offered through Whole Foods' physical stores, the Whole Foods analogy would be more akin to *Robles v. Domino's Pizza,* where the Ninth Circuit held that Title III of the ADA applied to Domino's website and app because they "connected customers to the goods and services of" Domino's physical restaurants. 913 F.3d at 905. The court found critical the fact that "[c]ustomers use the website and app to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-store pickup." *Id*. That critical connection is missing here because Moo does not operate any stores.

[5] *See Winegard*, 556 F. Supp. 3d at 177 at *3 n.1 (E.D.N.Y. Aug. 16, 2021) (rejecting other courts' (like *Carparts*) suggestion that "travel service" does not invariably refer to a physical space because "[r]ead in context, 'travel service' appears to refer to travel agencies and to facilities—such as American Express counters—offering traveler's cheques, currency-exchange services and the like. These businesses commonly operated out of physical facilities when the ADA was adopted, and still do (albeit in lesser numbers)."

further from the truth.  Moo unequivocally submits that Title III of the ADA does not apply to stand-alone websites despite what a handful of district courts have erroneously decided.

That is, Moo is not asking this Court to look to the Proposed Act for what the law "ought to be." (Pl. Br. at 15).  Moo is content with the present form of Title III, which makes clear that it does not apply to stand alone websites.  But Plaintiff is wrong that the Proposed Act has no value in discerning the meaning of the ADA as enacted.  Congress does not operate in a vacuum. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change . . . [s]o too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S. Ct. 866, 870, 55 L. Ed. 2d 40 (1978). The Proposed Act is an attempt to correct an injustice spawned by the erroneously decided district court cases and lack of regulatory guidance which have plagued the business industry, and which have created an unconscionable windfall for serial plaintiffs' lawyers.

As early as 2018, several Senators recognized that plaintiffs' lawyers were exploiting the lack of clarity in the law for personal gain at the expense of small and midsize businesses.  *See* September 4, 2018 Letter by Sen. Grassley, *et al*. to Attorney General Jeff Sessions.[6] The Senators urged the DOJ to step in a regulate because "[b]usinesses would rather invest in making sure they can serve their disabled customers, instead of pay money to avoid a shakedown by trial lawyers who do not have the interests of the disabled at heart." *Id*.   The DOJ abstained from issuing formal regulations.  As a result, the situation for businesses has become far more dire with (as of 2021)

---

[6] https://www.judiciary.senate.gov/imo/media/doc/2018-10 04%20Grassley,%20Rounds,%20Tillis,%20Crapo,%20Cornyn,%20Ernst%20to%20Justice%20Dept.%20-%20ADA%20Website%20Accessibility.pdf (last accessed August 15, 2022).

9

over 4000 website accessibility lawsuits filed per year!  (*See* Martin S. Krezalek, *DOJ's Failure To Provide Effective Guidance on Website Accessibility Requirements Under the ADA Leaves Congress as the Only Option To Address the Problem of Abusive Lawsuits*, N.Y. LAW JOURNAL (April 28, 2022) (Krezalek Declaration, dated August 16, 2022, at Exhibit 1).  Congress's proposal of a Title VI which would operate much differently than Title III (e.g., stricter pleading requirements and cure periods) is a tacit recognition that the district court decisions are inconsistent with the ADA as enacted and that the ADA needs to be amended before it can apply to websites.

### III. THE COURT SHOULD CERTIFY THE ISSUE FOR INTERLOCUTORY APPEAL

Finally, should the Court be inclined to deny this motion, in the interest of judicial economy, Moo respectfully requests that the Court certify its decision for interlocutory appeal under 28 U.S.C. § 1292(b), which provides for certification if the Court determines: "(1) that such order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014).  The parties' respective positions demonstrate that the standard is satisfied without the need for additional motion practice.

### CONCLUSION

Accordingly, Moo respectfully requests that the Court dismiss the FAC with prejudice.[7]

Dated: New York, New York
       August 16, 2022

                                        BLANK ROME LLP

                                        By: */s/ Martin S. Krezalek*
                                        1271 Avenue of the Americas
                                        New York, New York 10020
                                        Tel. (212) 885-5000

---

[7] As Moo established in its moving papers, and as Plaintiff concedes, Plaintiff's NYCHRL claim falls with his ADA claim.  (See Deft. Br. at 17; see also Pl. Br. at 15-16).

10

martin.krezalek@blankrome.com
*Attorneys for Defendant Moo Organic Chocolates LLC*

11