UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/26/22
```

-------------------------------------------------------------- X
VICTORIANO TAVAREZ, *individually and*
*on behalf of all others similarly situated*,

                               Plaintiff,

-against-

MOO ORGANIC CHOCOLATES, LLC,

                               Defendant.
-------------------------------------------------------------- X

21-CV-9816 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

      In 1990, the U.S. Congress passed the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, with the sweeping goal of eliminating discrimination against individuals with disabilities. Plaintiff Victoriano Tavarez, who is legally blind, has sued Defendant Moo Organic Chocolates, LLC ("Moo Chocolates") pursuant to the ADA because Moo Chocolates' website, www.moochocolates.com, is inaccessible to him and other blind or visually-impaired people. Defendant argues that its website is not a "place of public accommodation" within the meaning of Title III of the ADA, and that therefore this action should be dismissed. The Court finds that websites are places of public accommodation as defined in the ADA. For that reason, Defendant's motion is DENIED.

## BACKGROUND

      Mr. Tavarez, who is legally blind and uses screen-reading software when browsing the Internet, alleges that, on unspecified occasions between June 27, 2021 and June 2022, he "browsed and attempted to transact business on Defendant's website," the sole means of transacting business with Defendant, but was faced with accessibility issues such as, *inter alia*, the screen reader failing to read pop-up links and the screen reader failing to describe the images

of selected products. Am. Compl., Dkt. 28 ¶¶ 1–2.[1]  On November 23, 2021, he filed this lawsuit alleging violations of Title III of the ADA and City law.  *See generally* Compl., Dkt. 1.  After Defendant moved to dismiss the Complaint, *see* Not. of Mot., Dkt. 22, Plaintiff filed an Amended Complaint, *see* Dkt. 28.  Defendant now moves to dismiss the Amended Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Not. of Mot., Dkt. 31.

## DISCUSSION

### I.   Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In general, "a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).  The Court is not required, however, to "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[1] For the purposes of this motion, the Court assumes all facts in the Amended Complaint are true.  The Court also assumes but does not decide that Plaintiff has adequately alleged that he has standing, an issue that is addressed further in Part IV *infra*.

## II. Title III of the ADA Applies to Websites

Title III of the ADA prohibits discrimination against individuals with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Defendant argues that, based on the statute's list of places of public accommodation that are governed by the ADA, a stand-alone website cannot be considered a "place of public accommodation" unless it is in some way connected to a physical, brick-and-mortar public place. Def. Mem., Dkt. 32 at 8–15. Neither the U.S. Supreme Court nor the Second Circuit has reached this question, and district courts are split on the issue. *See, e.g.*, *Romero v. 88 Acres Foods, Inc.*, No. 20-CV-9215, 2022 WL 158686, at *5 (S.D.N.Y. Jan. 18, 2022) (collecting cases). From what little guidance exists, however, this Court concurs with the vast majority of other judges in this District who have decided the issue that a "place of public accommodation" includes public-facing websites that are not tethered to a physical location.[2]

Other courts have summarized the circuit split on whether public accommodations must be related in some way to physical places, and the Court need not repeat that discussion. *See, e.g.*, *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 388–91 (E.D.N.Y. 2017) (detailing the split between the Third, Sixth, Ninth, and Eleventh Circuits, all of which require that a means of transaction have a "nexus" to a physical location, and the First and Seventh Circuits, which do not). The leading case in the Second Circuit on the breadth of Title III is

---

[2]  The Court is well-aware that the decisions of its District-level colleagues are not binding. Def. Reply, Dkt. 36 at 2 (citation omitted). That does not mean, however, that they are not persuasive. The Court notes that at least seven of its colleagues, one of whom has since ascended to the Second Circuit, have found that Title III of the ADA applies to websites. *See Paguada v. Athena Allergy, Inc.*, Order, Dkt. 38, No. 21-CV-1245 (S.D.N.Y. Feb. 22, 2022); *Romero*, 2022 WL 158686, at *6–7; *Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589, 2021 WL 2012512, at *3 (S.D.N.Y. May 20, 2021); *Winegard v. Crain Comms., Inc*., No. 20-CV-01509, 2021 WL 1198960, at *2 (S.D.N.Y. Mar. 30, 2021); *Lopez v. Arby's Franchisor, LLC*, No. 19-CV-10074, 2021 WL 878735, at *5 (S.D.N.Y. Mar. 8, 2021); *Dominguez v. Banana Republic, LLC*, No. 19-CV-10171, 2020 WL 1950496, at *8 (S.D.N.Y. April 23, 2020); *Del-Orden v. Bonobos Inc.*, No. 17-CV-2744, 2017 WL 6547902, at *11 (S.D.N.Y. Dec. 20, 2017).

*Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), *opinion amended on denial of reh'g,* 204 F.3d 392 (2d Cir. 2000). In *Pallozzi*, the Second Circuit determined that Title III applies to insurance underwriting because insurance policies constitute "goods" and "services." In doing so, it rejected the defendant's argument that Title III's reach is limited to access to the physical facilities of insurance companies. 198 F.3d at 31–33. Although the Circuit rejected the defendant's crabbed interpretation of the statute, it did not reach the broader question of whether there needs to be a nexus between the goods and services in question and a physical location in order to bring access to the goods and services of a business within the scope of Title III.

Because the issue is undecided in this Circuit, the Court turns to the statute. The question before the Court is how to interpret the phrase "any place of public accommodation" in light of the surrounding language in the statute. *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another."). When statutory language is ambiguous, the Court may look to canons of statutory interpretation and the statute's legislative history to resolve the ambiguity, as well as the broader context and primary purpose of the statute. *Serv. Emps. Int'l, Inc. v. Dir., Off. of Workers Comp. Program*, 595 F.3d 447, 453 (2d Cir. 2010) (citations omitted).

Title III lists many types of public accommodation, primarily including physical locations but also types of services, such as "travel service," without noting whether such a service must be tied to a physical location. 42 U.S.C. § 12181(7).[3] The inclusion of a service indicates that

---

[3] Even the cases that Defendant cites for the proposition that Congress included only physical spaces within the definition of places of public accommodation acknowledge that at least one public accommodation listed — a travel service — is not a physical structure. *See, e.g.,* Def. Mem. at 12 (citing *Martinez v. MyLife.com*, No. 21-CV-4779, 2021 WL 5052745, at *2 (E.D.N.Y. Nov. 1, 2021) ("Of the fifty specific examples of businesses contained within the ADA's definition of 'public accommodation', at least forty-nine indisputably relate to physical spaces.") (citation omitted)).

places of public accommodation are not limited to physical places. In addition, the statute's silence on the matter of websites, specifically, cannot be seen to be an unambiguous effort to exclude them from the scope of coverage because the statute was passed in 1990, well before Internet sites became ubiquitous. And "the fact that reasonable jurists have reached different conclusions about how far Title III extends reveals some measure of ambiguity in the text of the statute." *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 569 (D. Vt. 2015).

Thus, as a threshold matter, the Court finds the text of the statute to be ambiguous. Because it is ambiguous, the Court next evaluates the statutory construction. The language surrounding the term "place of public accommodation" supports the conclusion that Title III encompasses websites, regardless of their connection to a brick-and-mortar location. As the Court has already noted, the list of public accommodations includes at least one service that is not tethered to a particular physical location. The Court agrees with other courts that Congress' inclusion of the term "travel services" indicates that it "'clearly contemplated' that the ADA would apply to service providers that 'do not require a person to physically enter an actual physical structure[,]'" including those who provide services by way of telephone or other modes of communication. *Romero*, 2022 WL 158686, at *5 (citing *Carparts Distribution Ctr., Inc. v. Automotive Wholsesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994)). The surrounding text of the rest of the statute also indicates that websites fall within its reach: the statute's stated purpose is to "provide a clear and comprehensive national mandate" to eliminate discrimination against disabled individuals. 42 U.S.C. § 1210(b)(1). Although websites are not specifically mentioned in the statute, the law's explicit purpose and the inclusion of providers that do not require physical entry into a location to access their goods and services indicate that websites are within the broad reach Congress intended Title III to have.

The ADA's legislative history also supports this conclusion. Congress' intent in passing the ADA was to integrate disabled individuals "into the economic and social mainstream of American life." H.R. Rep. No. 101-485, pt. 2, at 50 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 332. Congress also passed the law with an expectation that it would encompass evolving technology. *Id.* at 108, *as reprinted in* 1990 U.S.C.C.A.N. at 391 ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times.").[4] To limit the ADA's reach to a point short of goods and services that are only available on the Internet, where much if not most American consumer research and purchasing now occurs, would contravene Congress' clearly-stated purpose of bringing disabled individuals into the economic mainstream of American life.

For those reasons, the Court finds that Defendant's website falls within the meaning of a "place of public accommodation" as defined in Title III of the ADA, regardless of its connection *vel non* to a physical space.

Because the Court finds that Plaintiff has stated a claim pursuant to the ADA, his City law claim is within the Court's supplemental jurisdiction. Def. Mem. at 18–19.

---

[4] Defendant's discussion of three congressmen's proposed legislation, *see* Def. Mem. at 17–18, sheds no light on the intent of the legislators who drafted and enacted the ADA or the construction of the relevant statutory terms. In addition, the Court does not interpret Congress' inaction since the ADA was enacted to suggest that websites are not places of public accommodation. Def. Reply at 4. If anything, Congress' inaction would support the opposite view, in that it sees no need to revise the ADA beyond its existing text to reach its sweeping goal.

Defendant also urges the Court not to be swept up in "policy arguments[.]" *Id.* at 3. But even as Defendant urges the Court not to consider questions of policy, it presents its own. The Court recognizes the dramatic increase in website accessibility lawsuits over the last several years, having presided over many. *Id.* at 9–10 (citations omitted); Def. Mem. at 1–2. But whether certain repeat lawsuit-filers are taking advantage of the statute for their own gain is not a proper consideration for the Court.

### III. Defendant's Request for Interlocutory Review is Denied

Defendant argues that, if the Court denies its motion, the Court should certify its decision for interlocutory appeal because the opinion "involves a controlling question of law . . . as to which there is substantial ground for difference of opinion and . . . an immediate appeal from [the] order may materially advance the ultimate termination of the litigation." Def. Reply at 10 (quoting 28 U.S.C. § 1292(b)). Defendant raised the possibility of an interlocutory appeal for the first time in its reply. "Generally, a court does not consider issues raised in a reply brief for the first time because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it." *Sacchi v. Verizon Online LLC*, No. 14-CV-423, 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015) (cleaned up). Defendant's request for interlocutory review is therefore denied.

### IV. Plaintiff Likely Fails to Allege Adequately Standing

Although Defendant did not challenge Plaintiff's standing, standing is a threshold matter of justiciability, and if a plaintiff lacks standing to sue, the Court has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction. *See Thompson v. Cnty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994); *Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). As a result, the Court addresses Plaintiff's standing *sua sponte*.

A plaintiff bringing a claim pursuant to the ADA has standing to sue for injunctive relief if "(1) the plaintiff allege[s] past injury under the ADA; (2) it [is] reasonable to infer that the discriminatory treatment [will] continue; and (3) it [is] reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [defendant's business] to plaintiff's home, that plaintiff intend[s] to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731

F.3d 184, 187–88 (2d Cir. 2013) (citation omitted). A plaintiff must plausibly allege "a real and immediate threat of future injury" for his or her complaint to meet the third prong. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (citation omitted).

Plaintiff's Amended Complaint contains no factual allegations that allow the Court plausibly to infer that he intends to return to Defendant's website. Am. Compl. ¶ 3 ("Plaintiff remains unable to, but still strongly desires and intends to, purchase chocolate from Defendant's website as soon as the barriers that impede his ability to do so are removed"). Although Plaintiff alleges that he browsed Defendant's website between June 27, 2021 and June 2022, *id.* ¶ 2, he does not indicate the frequency of his visits, when each visit occurred, that he has some particular interest in purchasing chocolate from this particular vendor, or any other facts from which the Court could plausibly infer he intends to return to the website. As a result, Plaintiff likely has not established Article III standing, and must either seek leave to file a Second Amended Complaint or show cause why the Court should not dismiss this case for lack of standing.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Docket 31.

Because of the deficiencies in the Amended Complaint that the Court has identified with respect to standing, not later than **September 9, 2022**, Plaintiff must either seek leave to file a Second Amended Complaint to allege adequately that he has standing to sue or show cause why the Amended Complaint should not be dismissed for lack of standing. Defendant must respond not later than **September 23, 2022**, and Plaintiff must reply not later than **September 30, 2022**.

**SO ORDERED.**

Date:  August 26, 2022
       New York, New York

                                         **VALERIE CAPRONI**
                                         United States District Judge